ATTORNEY FOR APPELLANT
Dan J. May
Kokomo, Indiana

ATTORNEY FOR APPELLEE
Timothy P. Spahr
Peru, Indiana

# In the
# Indiana Supreme Court

_____

No. 34S02-0701-CV-8

KATHY L. WHITED,

*Appellant (Respondent below),*

v.

KENNETH B. WHITED,

*Appellee (Petitioner below).*

_____

Appeal from the Howard Superior Court III, No. 34D03-0405-DR-00005
The Honorable Douglas A. Tate, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 34A02-0507-CV-00626

_____

**January 9, 2007**

**Shepard, Chief Justice.**


The parties before us have spent considerable time and money litigating the amount of child support due from the 1990's. The trial court gave the obligor/father both too much and not enough. It wrongly permitted him a retroactive modification of support for a period in which he should have fully paid an "order in gross" for three children, but it also ordered him to pay support after two children were emancipated and the third had come to live with him, in what was a de facto change of custody.

## Facts and Procedural History

Kenneth R. Whited and Kathy L. Holland married in September 1973. They had four children, but the present dispute involves only three: Faith, Benjamin, and Joshua.

Kenneth and Kathy divorced on December 18, 1979. At the time, parents and children all lived in Howard County, Indiana. The trial court initially awarded custody of the children to Kathy. In November 1980, however, the court transferred custody to Kenneth. Finally, in December 1985, upon agreement of the parties, the court transferred custody of the children back to Kathy and ordered Kenneth to pay $60 per week in child support.

Kathy and the children subsequently moved to Florida. The children visited Kenneth in Indiana for extended periods of time after the move. Although the child support order directed a specified sum of undivided support for several children (sometimes called an "order in gross"), Kenneth proportionally reduced his payments in accordance with the number of children in his care. Thus, if one child was in Indiana with Kenneth and two children were in Florida with Kathy, Kenneth paid Kathy two-thirds of the court-ordered child support for that period.

In August 1990, Kathy moved to modify support and calculate an arrearage. During a deposition taken for this proceeding, Kathy said that despite Kenneth's improper reduction in support for the children's extended stays in Indiana, she did not believe Kenneth owed her "a support payment for any of the periods of time that the children actually resided with him under his care and control and under his roof." (Appellant's App. at 13 (quoting Kathy Holland Dep. at 103, Sept. 27, 1990).) The trial court agreed, and declared that Kenneth did not owe any child support arrearage. (Id. at 57 ("1991 Support Order").) The court also increased Kenneth's weekly support obligation to $173. The 1991 Support Order, like all previous orders, did not provide for any reduction in payments during the children's stays in Indiana.

Kenneth regularly made support payments until November 10, 1993, the date that his youngest son, Joshua, moved back to Indiana.[1]  Consistent with his earlier practice, however, Kenneth continued to reduce his payments proportionally during the children's extended stays in Indiana.

In April 2004, nearly eleven years after Kenneth's last child support payment, Kathy moved to determine the arrearage and to enforce Kenneth's child support obligation, requesting both prejudgment interest on Kenneth's arrearage and attorney's fees.  In calculating the arrearage, the trial court determined March 1, 1991 through March 9, 1995 as the relevant time frame.[2]  The court held that Kenneth "is entitled to credit for the time that any unemancipated child spent living with him."  (Id. at 16.)

The trial court thus calculated Kenneth's arrearage for the four years in question by reference to two periods:

(1) March 1, 1991 – November 10, 1993:[3] Although these dates span 139 weeks, the trial court found that Kenneth was obligated for only seventy-one weeks.  (Id. at 16, 79.)[4]

(2) November 10, 1993 – March 9, 1995:[5] The court applied the maximum parenting time credit (183 days) under the Indiana Child Support Guidelines to lower Kenneth's obligation from $173 per week to $93 per week.  (Id. at 17.)

The trial court totaled the two obligations and subtracted the amount Kenneth paid in support during this time frame to determine the arrearage.  It denied Kathy prejudgment interest and attorney's fees.

---

[1] Kenneth and Kathy agreed that the two older children, Faith and Benjamin, were emancipated prior to November 10, 1993.  As a result, Kenneth stopped all child support payments once Joshua, the last unemancipated child, moved back to Indiana on November 10, 1993.  In addition, Joshua turned eighteen on March 9, 1995, and Kenneth and Kathy agreed that Kenneth's support obligation could not extend beyond that date.

[2] "March 1, 199[1] is the day that the support order was modified to $173.00 per week and March 9, 1995 is the day the youngest child [Joshua] reached 18 years of age."  (Appellant's App. at 16.)

[3] This period represents the time between the order in gross and the date Kenneth and Kathy's youngest son, Joshua, moved back to Indiana.  (Appellant's App. at 14, 16.)

[4] The trial court did not explain how it calculated seventy-one weeks, saying only that Kenneth "is entitled to credit for the time that any unemanciapted child spent living with him."  (Appellant's App. at 16.)

[5] November 10, 1993 is the date that Kenneth and Kathy's youngest son, Joshua, moved back to Indiana, and March 9, 1995 is the date that Joshua turned eighteen.  (Appellant's App. at 14, 16.)

Kathy appealed, arguing that the trial court abused its discretion by: ordering a retroactive modification; applying a retroactive visitation credit; denying prejudgment interest on Kenneth's arrearage; and denying fees. The Court of Appeals affirmed. Whited v. Whited, 844 N.E.2d 546, 547 (Ind. Ct. App. 2006), vacated. It acknowledged the long-standing Indiana rule prohibiting retroactive modification, but concluded that Kenneth and Kathy entered into an "implied contract" that amounted to a change of custody and fit within a narrow exception to the rule against retroactive modification. Id. at 551-53. We granted transfer.

## I.    Rule Against Retroactive Modification

For at least seventy-five years, Indiana has held that after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations. See Corbridge v. Corbridge, 230 Ind. 201, 206, 102 N.E.2d 764, 767 (1952) ("After support installments have accrued, the court is without power to reduce, annul or vacate such orders retrospectively, and a petition to modify only operates prospectively."); Zirkle v. Zirkle, 202 Ind. 129, 135, 172 N.E.2d 192, 194 (1930) ("But after payments had accrued, it was not within the power of the court to annul any of them in this proceeding."); Biedron v. Biedron, 128 Ind. App. 299, 148 N.E.2d 209 (1958). Our statutes have explicitly prohibited retroactive modification since at least 1987. 1987 Ind. Acts 1297-99 (current version at Ind. Code Ann. § 31-16-16-6 (West 2006)). We reaffirmed this bright-line rule in Nill v. Martin, 686 N.E.2d 116, 117 (Ind. 1997), holding that a parent subject to a support order must make payments in accordance with that order until the court modifies and/or sets aside the order. As a result, informal agreements between parents are generally not effective until a motion for modification is filed. Id. at 118.

Moreover, when a court enters an order in gross, that obligation similarly continues until the order is modified and/or set aside, or all the children are emancipated, or all of the children reach the age of twenty-one. See, e.g., Ogle v. Ogle, 769 N.E.2d 644 (Ind. Ct. App. 2002); Schrock v. Gonser (In re Marriage of Schrock), 658 N.E.2d 615 (Ind. Ct. App. 1996). We have prohibited retroactive modification even where one of the several children subject to the order in gross died. See Kaplon v. Harris (In re Marriage of Kaplon), 567 N.E.2d 1130, 1132-33 (Ind.

4

1991) ("[C]ourt wrongly effected a retroactive modification by crediting [father] with one-third of every support payment due after the date of [son's] death . . . ."); Nill, 686 N.E.2d at 118 (no retroactive modification even where one of the children subject to order in gross died and parents informally agreed to reduce support).

In re-affirming these long-standing principles ten years ago, we recognized that they may occasionally cause inequities, but observed that the benefits outweighed any potential inequities.

> If parties could effect legal modifications of child support through informal means, disputes over amounts and methods and effective dates would certainly multiply. Disagreements over such issues have led to expensive litigation . . . . A bright-line rule limiting informal arrangements and effecting modifications only after the date a petition for modification is filed short-circuits many disputes. The time and money spent litigating informal agreements that later go awry could be well spent for the support of children. Compared to the cost of litigation such as that before us now, submitting for court approval an agreed order modifying is among the simplest of legal tasks.

Nill, 686 N.E.2d at 118-19. Consistent with the public policy of protecting the welfare of children, this rule requires judicial action to reduce a support order.

> In keeping with [the public policy of protecting children], Indiana courts have from time to time voided agreements reached by parents. Agreements which yield up a support opportunity for a child have been especially suspect. We have treated custodial parents who receive child support as trustees of the payments for the use and the benefit of the child. Neither parent has the right to contract away these support benefits. The right to the support lies exclusively with the child.

Straub v. B.M.T., 645 N.E.2d 597, 599 (Ind. 1994) (citations omitted).

Thus, subject to two narrow exceptions, court orders for child support remain effective until a court changes them. This rule protects the welfare of children, provides predictability and certainty, and prevents extended and expensive litigation about alleged informal agreements between parents.

5

## II.      Exceptions to the Rule Against Retroactive Modification

Retroactive modification is permitted when: (1) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, or (2) the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised.[6]

*A. Alternative Method of Payment that Substantially Complies with Spirit of Decree.* The standard for alternative arrangements that "substantially comply" with the spirit of the original decree is rigorous.  Credit for non-conforming payments is recognized when parents informally agree to change the form of payment (e.g., payment directly to the parent as opposed to through the clerk's office), so long as the amount of payment can be verified and there is no reduction of amount.  Compare Payson v. Payson, 442 N.E.2d 1123, 1129 (Ind. Ct. App. 1982) (payments made directly to mother and to third parties for rent instead of through clerk of court substantially complied with spirit of decree), with Decker v. Decker, 829 N.E.2d 77, 80 (Ind. Ct. App. 2005) (child care did not substantially comply with decree requiring father to pay weekly installments to clerk).

*B. Permanent Change of Custody.*  A second exception exists where the obligated parent, by agreement with the custodial parent, takes the child or children into his or her home, assumes custody, provides the child with necessities, and exercises control over the child's activities for such an extended period that a permanent change of custody has occurred.  See Nill, 686 N.E.2d at 118; O'Neil v. O'Neil, 535 N.E.2d 523, 524 (Ind. 1989) (citing Isler v. Isler, 425 N.E.2d 667, 669-70 (Ind. Ct. App. 1981) (exception excludes "nonconforming payments" made during summer vacations and other durations that do not constitute a permanent change of custody)).

---

[6] We originally recognized a third exception in O'Neil v. O'Neil, 535 N.E.2d 523 (Ind. 1989), when support payments have been made by the obligated party even though the payments are technically non-conforming.  We subsequently determined, however, that this exception is the same as exception (1) stated above.  See Nill, 686 N.E.2d at 118.

The Court of Appeals applied this exception in deciding In re Marriage of Jackson, where the father was subject to an order in gross, but both of the parties' children permanently moved into their father's home nearly eight years earlier. 682 N.E.2d 549, 552 (Ind. Ct. App. 1997). The court held:

> [B]y [mother's] prolonged acquiescence, and by her own failure to support her children, [mother] has consented to the current custodial arrangement in which [father] has assumed almost total responsibility for them. She cannot now complain that she never actually agreed to give [father] primary physical custody of the children in lieu of child support payments.

Id. The court concluded that this case fell squarely within an exception to the general rule prohibiting retroactive modification, noting that any accumulated arrearage could not "be used to reimburse [mother] for support she never provided." Id.

Where a parent is subject to an order in gross, however, this exception can be applied only where all children subject to the order permanently change custody. See, e.g., Isler, 425 N.E.2d at 669-70 (where one or more children remain in the original custodian's care, "[a]ny order reducing the support must follow the court's thorough consideration of whether the support order is excessive for the remaining children."). Thus, the court may deny a "pro rata reduction" to fully support the remaining children and ease the original custodian's burden.

### III. Calculation of Kenneth's Arrearage

*A. 1991-1993*

The trial court wrongly applied a retroactive modification to reduce Kenneth's support obligation. Although the March 1991 through November 1993 timeframe spans approximately 139 weeks, the trial court obligated Kenneth for only seventy-one weeks.

As one might well imagine, when the trial court heard testimony from Kenneth, Kathy, and the children about the children's living arrangements from 1991 through 1993, everyone's memories were dimmed by the passage of more than twelve years. (Appellant's App. at 13, 14.)

7

It is clear, however, that each of the children visited Kenneth for extended periods of time, but at least one child remained in Kathy's care at all times during the 1991 through 1993 timeframe. Although Kenneth proportionally reduced his support payments, he continued to make payments for at least one child through November 10, 1993, suggesting that at least one child remained in Kathy's care.[7]

The trial court held that Kenneth should be given credit for any time that any unemancipated child spent living with him. As a result, the court faced the nearly impossible task of determining, in 2005, each child's living arrangements between 1991 and 1993. The court's reduction from 139 weeks to 71 weeks, though unexplained, apparently represented an attempt to credit Kenneth for the time that any child spent in his care. The uncertainty and unpredictability of such judicial determinations, however, are among the reasons for prohibiting retroactive modification. See Nill, 686 N.E.2d at 118-19.

The Court of Appeals affirmed this calculation, saying that an implied contract existed between Kenneth and Kathy. Whited, 844 N.E.2d at 551-53. Case law to the contrary is legion. See, e.g., Connell v. Welty, 725 N.E.2d 502, 505 (Ind. Ct. App. 2000) ("A parent desiring a reduction of the undivided support order as the children become emancipated must petition the court to modify its original order."); Schrock, 658 N.E.2d at 616 ("When a parent is ordered to pay a specified sum of undivided support for more than one child, the parent must pay that amount until the support payments are modified by court order or all of the children are emancipated or reach the age of 21 years."); Jackson, 682 N.E.2d at 552 (applying change of custody exception where all children permanently changed custody).

It is clear from Kenneth's payment history that at all times between 1991 and 1993 at least one child dependent on Kenneth's support remained in Kathy's care. Accordingly, Kenneth was not permitted to reduce his payments under the order in gross.

---

[7] Kenneth's support records illustrate this fact since Kenneth continued to proportionally reduce his payments in accordance with the number of children in his care. (Appellant's App. at 53-56.)

8

*B.*      *1993-1995*

The trial court applied a second retroactive modification, in the form of a maximum parenting time credit, to the November 10, 1993 through March 9, 1995 timeframe, and the Court of Appeals affirmed. The courts held that the parenting time credit reduced Kenneth's support obligation from $173 per week to $93 per week.

The parenting time credit in the Child Support Guidelines is available for purposes of calculating what support order a court should set. Ind. Child Support Guideline 3(G), 6. It is not an exception to the non-conforming payments rule.

Still, we conclude that Kenneth had <u>no</u> child support obligation during the 1993 through 1995 timeframe. Kenneth made his last child support payment on November 10, 1993, the day that his youngest son, Joshua, permanently moved back to Indiana. By this time, Kenneth and Kathy agreed that the two older children, Faith and Benjamin, were emancipated and neither remained in Kathy's care. (Appellant's Br. at 26.) Even though Kenneth was subject to an order in gross, once Joshua moved back to Indiana on November 10, 1993, no child remained in Kathy's care. Therefore, the change of custody exception terminated Kenneth's support obligation in its entirety. <u>Nill</u>, 686 N.E.2d at 118.

*C.*      *Kenneth's Arrearage*

Thus, Kenneth owed all amounts directed by the 1991 order in gross until November 10, 1993, and nothing thereafter.

## IV.    Prejudgment Interest

The statute authorizing prejudgment interest on delinquent child support payments affords courts discretionary power.[8]   We review decisions regarding award of prejudgment interest under an abuse of discretion standard.

The Court of Appeals concluded that the trial court's denial of Kathy's request for prejudgment interest rested on two grounds: (1) Kathy waited nearly eleven years after Kenneth's last support payment to attempt to enforce the 1991 Support Order; and (2) the calculation for the arrearage owed was uncertain at best.  See Whited, 844 N.E.2d at 554.

First, although Kathy's delay in raising the issue of child support arrearage does not bar her claim, the court may properly consider the delay when making the discretionary decision whether to award prejudgment interest.  Id.  In fact, Ind. Code § 34-51-4-8(b) provides that "[t]he court shall exclude from the period in which prejudgment interest accrues any period of delay that the court determines is caused by the party petitioning for prejudgment interest."  The trial court certainly could deny prejudgment interest based on Kathy's acquiescence in Kenneth's proportional reductions and her delay in seeking enforcement.

Second, prejudgment interest should be awarded only where damages are readily ascertainable and can be calculated by simple mathematical computation.  Bopp v. Brames, 713 N.E.2d 866, 872 (Ind. Ct. App. 1999).  The procedural history alone of this case demonstrates how complex the arrearage calculation was.

Finally, "[d]amages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest."  Id.  There is no question that Kenneth's arrearage was accumulated in good faith.  All of these factors support the trial court's denial of prejudgment interest, and we affirm.

---

[8] See Ind. Code Ann. § 31-16-12-2 (West 2006) ("The court may . . . order interest . . . .") (emphasis added).

10

## V.     Attorney's Fees

Indiana Code § 31-16-11-1, the statute regarding attorney's fees, is also discretionary.[9] The Court of Appeals held:

> A determination regarding attorney fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court, however, need not cite the reasons for its determination.

Whited, 844 N.E.2d at 554 (citations omitted). Like the Court of Appeals, we think the trial court was in the best position to make this determination and consider the above factors. We affirm the denial of attorney's fees.

## VI.     Conclusion

We vacate the trial court's calculation of the arrearage, and direct it to set the arrearage by calculating the full amount of the 1991 order in gross up until November 10, 1993, and nothing thereafter. We affirm the denial of prejudgment interest and attorney's fees.

Dickson, Sullivan, and Rucker, JJ., concur.
Boehm, J., dissents with separate opinion.

---

[9] See Ind. Code Ann. § 31-16-11-1 (West 2006) ("The court periodically may order a party to pay a reasonable amount for . . . attorney's fees . . . .") (emphasis added).

11

**Boehm, J., dissenting.**

I respectfully dissent. The husband and wife in this case worked out an adjustment to their changed family circumstances that was acceptable to both for over twenty years. The wife first asked the court to assess arrearages in this case eleven years after the last support payment had been made. More importantly, her request came eleven years after the last child left the nest, so this dispute has nothing to do with the level of funding available for the children. Only the financial interests of the husband and the wife are affected by the result. Arrangements the parties have worked out between themselves should be honored where their interests, and theirs alone, are at stake. Under these circumstances, I would find that the wife is estopped from seeking court relief to readjust a financial arrangement that both parties had lived with, and come to rely upon, for more than a decade.

The majority today extends Nill v. Martin, 686 N.E.2d 116 (Ind. 1998), to apply even where no challenge to the agreed arrangement is raised until long after the last child has been emancipated. As I observed in dissent in Nill, I believe the rule the majority invokes requires unneeded resort to the courts. To the extent possible, rules of law should conform to the expectations of ordinary citizens. Most people would expect this agreed arrangement to be acceptable and consider consulting a lawyer unnecessary. And, as Nill itself demonstrated, even if lawyers are involved they may not avoid the trap of assuming an agreed resolution is acceptable and enforceable. Where the interests of the children are concerned, they trump any regard for honoring private arrangements between the parents. But here the only interest is the relative balance sheets of the two former spouses. Imposing a "bright line" rule that any agreed adjustment in support without court approval can be overturned years later seems fundamentally unfair and unnecessary to accomplish the legitimate goal of concern for the children.