In the Matter of Cathy Marie McGUIRE and Edith McGuire, Appellants–Petitioners,

v.

Maxin Jerome McGUIRE, Appellee–Respondent.

No. 49A02–0705–CV–421.

Court of Appeals of Indiana.

Jan. 31, 2008.

Janice E. Smith, Indianapolis, IN, Attorney for Appellant.

Tracey Yeager, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Cathy McGuire ("Mother") and Edith McGuire ("Daughter") appeal the trial court's judgment in their action for child support against Maxin McGuire ("Father"). They raise five issues, which we consolidate and restate as:

1. Whether the court erred in calculating child support due;

2. Whether the court erred in ordering Father to pay $50 per week on the arrearage;

3. Whether the court abused its discretion in denying prejudgment interest; and

4. Whether the court abused its discretion in denying Mother's request for attorney fees.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Mother and Father married in early 1978 and Mother gave birth to Daughter in December of that year. In 1981, Father was to begin reimbursing the welfare department $25 per week for assistance received. A February 3, 1986, divorce decree gave Mother custody of Daughter and ordered Father to pay $25 per week in child support. Daughter lived with Mother until 1990, when she lived a few months with Father and a few months with an aunt, Phyllis. She then returned to Mother's care for three years.

Daughter began living with a maternal aunt and uncle, Rhonda and Kenneth Day, in September 1993. In December 1993 and January 1994, Daughter, Mother, and Father signed consents transferring Daughter's custody to the Days. A court order on January 23, 1994, transferred custody of Daughter to the Days but was silent regarding child support. Daughter remained with the Days through December 1994, when she returned to Mother's house. No court order ever modified custody from the Days back to Mother. Daughter was emancipated on December 26, 1996, which was her eighteenth birthday.

On December 18, 2006, Mother asked the court to calculate Father's child support arrearage and to add Daughter as a party.[1] The court made Daughter a party, then ordered, in pertinent part:

4. The child support obligation owed by [Father] accrued in this cause from February 3, 1986 to February 23, 1994 (the date custody was transferred from [Mother] to [the Days]) at the rate of $25.00 per week which equals a total gross child support obligation of $10,450.00 during that period (418 weeks × $25 per week).

5. [Mother] argues that child support should extend to and be paid to her through December 26, 1996, the date of [Daughter]'s emancipation. However this Court declines to follow that argument for the following reasons:

a) The court order granting custody of [Daughter] to [the Days] (dated February 23, 1994) did not provide for child support and pursuant to *Whited v. Whited*, 844 N.E.2d 546 [ (2006) ] (a January 2007 Indiana Court of Appeals decision) a change of custody terminates the existing child support order paid to Petitioner despite the lack of an express order of the Court to do so.

**"Still we conclude that Kenneth had *no* child support obligation during the 1993 through 1995 timeframe. Kenneth made his last child support payment on November 10,**

1. Mother sent notice of the action to the Days, but they did not appear.

1993, the day that his youngest son, Joshua, permanently moved back to Indiana .... once Joshua moved back to Indiana ... no child remained in Kathy's care. Therefore, the change of custody exception terminated Kenneth's support obligation in its entirety." *Whited v. Whited,* 844 N.E.2d 546 [859 N.E.2d 657] (January 9, 2007).

b) to require [Father] to pay to [Mother] child support during a period of time that [Mother] did not have custody of [Daughter] but rather [Daughter] was in the care of [the Days] would serve as an unjust enrichment to [Mother].

6. A certified Marion County Child Support Account Record was admitted into evidence, on Petitioner's motion, showing that Respondent made payments against this child support obligation in the total amount of $2,048.00 between November 20, 1986 and the present.

7. [Mother] argues that [Father] should not be given credit for [Father's] payment made on November 20, 1986 in the amount of $425.00 and [Father's] payment made on November 25, 1987 for the reason that [Mother] testified that she did not receive those payments. However this Court finds that [Mother's] own exhibit (the Marion County Child Support Account Record) certifies that [Father] made such payments on said dates and thus should be given credit for the same. If [Mother] feels or believes that she has not received monies paid to the Clerk and due her, [Mother's] claim is with the Marion County Clerk's Child Support Division and not [Father].

8. As a result of the foregoing [Father] is in arrears in his child support obligation in the amount of $8,402.00 ($10,450.00 due minus $2,048.00 paid) as of the emancipation of [Daughter] on December 26, 1996.

9. [Father] shall pay said arrears in full by paying $50.00 per week toward the arrears, through the Marion County Clerk's Child Support Division, beginning the first Friday following entry of this order and every Friday thereafter until paid in full.

10. Pursuant to Ind.Code 34–51–4–8, prejudgment interest should not be awarded in this matter.

11. [Mother] argues for contribution toward her attorney fees by [Father]. However, as is properly stated by [Mother] in her own petition, pursuant to *Trent v. Trent,* 829 N.E.2d 81 (Ind. App.2005) [sic], [Mother] does not have a contempt of court remedy for [Father's] failure to pay child support and, as a result, no statutory or case law authority exists to award attorney fees against [Father]. Additionally, [Mother] appears, at trial and in her petition, to be making an "equity" argument for the award of attorney fees against [Father]. However, in examining the equities in this case, the Court finds that, per the testimony of all parties, [Father] was in prison for the greatest share of [Daughter's] minority and thus not, as a practical matter, able to pay support (albeit that the support order does not abate). Further, the Court finds that [Mother] waited *fifteen years* to file this action against [Father] despite [Father's] last child support being made on April 22, 1992. [Father] has been out of prison for at least three and one-half years and [Mother] and [Daughter] have both always known where to locate [Father]. In fact, the testimony indicated that [Daughter] had lived with [Father] on a few occasions between [Father's] prison stints and has had significant contact

with [Father] since his last release from prison over three years ago. As a result the equities do not favor [Mother's] request for attorney fees. No attorney fees are awarded. Both parties shall pay their own respective attorney fees without contribution from the other.

(Appellant's App. at 2–4) (emphases in original).

## DISCUSSION AND DECISION

### 1. *Arrearage Due*

 Mother and Daughter argue the court incorrectly calculated the amount of child support Father owes.

Determinations of child support obligations are within trial court's discretion, and we will not set such determinations aside unless they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it relies on an incorrect legal standard. We give due regard to the trial court's ability to assess the credibility of witnesses. While we defer substantially to findings of fact, we do not do so to conclusions of law. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Trent v. Trent*, 829 N.E.2d 81, 85 (Ind.Ct. App.2005) (internal citations and quotations omitted). We review the trial court's calculations of how much support was due, how much Father paid, and the balance.

### A. *Termination Date*

 Their first assertion is the court erred when calculating Father's arrearage by terminating Father's obligation to pay support when custody of Daughter was transferred from Mother to the Days in 1994. We agree the court erred in its application of *Whited v. Whited,* 859 N.E.2d 657 (Ind.2007), to the 1994 transfer of custody in this case.

 Indiana's long-standing rule is that "after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." *Id.* at 661. But there are "two narrow exceptions" to that general rule. *Id.*

Retroactive modification is permitted when: (1) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, or (2) the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised.

*Id.*

The trial court relied on the second of those, the "change of custody" exception. However, custody of Daughter was transferred to third parties, not to "the obligated parent." *Id.* Accordingly, the change of custody from Mother to the Days does not fit into the "narrow exception" defined by our Supreme Court, *id.*, and Father's support obligation did not terminate in 1994 pursuant to *Whited.*

 Father's other argument for terminating his child support obligation, which the trial court also adopted, was that equity should not permit Mother to be unjustly enriched at Father's expense. "Both Mother and [Daughter] agree that Mother should not receive the child support benefit while [Daughter] was at the Days. However, the child support belonged to [Daughter] and can be paid to her." (Appellants' Reply Br. at 3.) Because the "right to support lies exclusively with the child," *Straub v. B.M.T. by Todd,* 645 N.E.2d 597, 599 (Ind.1994), *reh'g denied,*

we agree Father's obligation to pay support did not abate while Daughter was with the Days, and Daughter should receive those payments.

### B. *Payments*

Mother and Daughter next assert the calculation of Father's arrearage is incorrect because the court credited Father for monies collected toward his obligation to the welfare department. We have carefully reviewed the four page document submitted from the Indiana Support Enforcement Tracking System and find it could support different conclusions regarding the amount of child support Father had paid toward his obligation to Mother.[2] Accordingly, we cannot find clearly erroneous the court's finding Father paid $2,048.00 toward his obligation to Mother.

### C. *Recalculation*

■ Father's obligation to support Daughter ended when she was emancipated on December 26, 1996. Thus, Father owed support for 566 weeks between the entry of the dissolution order and Daughter's emancipation.[3] At $25 per week, Father's total obligation was $14,150.00.

The parties agree Daughter should receive the $400 of support for the sixteen months she was in the custody of the Days. Accordingly, the gross obligation remaining to Mother was $13,750.00. However, Father already paid $2,048, and his

obligation remaining to Mother is $11,702.00.

### 2. *Payment Amount*

■ Mother and Daughter next argue the court erred when it ordered Father to pay only $50 per week toward the arrearage. They claim the order to pay $50 per week was "plucked from the air making it an arbitrary decision and abuse of the trial court's discretion," (Appellants' Br. at 14), because the court "refused to hear evidence as to Father's current income." (*Id.*) It did not. The court did not allow counsel to question Father about the availability of tax returns for 2003, 2004, and 2005, but Father testified his weekly income after taxes was $350.00. The court had evidence before it from which it could determine a reasonable weekly arrearage payment.

### 3. *Prejudgment Interest*

Mother and Daughter argue the court abused its discretion when it denied prejudgment interest "because it applied Ind. Code § 34-51-4-8 to the issue of prejudgment interest." (Appellants' Br. at 14.) Because Chapter 34-51-4 applies to tort actions, and because collection of child support is not a tort action, Mother and Daughter argue "Ind.Code § 34-51-4-8 simply does not apply in this matter." (*Id.*) We disagree.

---

**2.** For example, two of the four pages refer to the lower court cause number for the dissolution action. The other two pages refer to a different cause number, which the parties seem to agree was a child support action filed against Father by the State Welfare Department for assistance given on behalf of Daughter. Nevertheless, Mother asserts one of the pages with the welfare cause number represents money she received from the Clerk's Office for support payments deposited by Father. In addition, the document indicates the two challenged amounts were collected from

Father, but the document does not indicate they were disbursed to Mother or anyone else.

**3.** For each of the years from 1987 to 1995, there would be 52 weeks. Because Daughter's birthday is one week before the New Year, Father owed for 51 weeks in 1996. In 1986, the court's order on February 4 left 47 weeks in the year during which Father owed support. Thus the total number of weeks is 566 ((9x52) + 51 + 47).

Ind.Code § 31–16–12–2 authorizes trial courts to award discretionary pre-judgment interest, *see Whited,* 859 N.E.2d at 664, but Ind.Code § 34–51–4–8 remains relevant to the court's exercise of its discretion:

> First, although [petitioner's] delay in raising the issue of child support arrearage does not bar her claim, the court may properly consider the delay when making the discretionary decision whether to award prejudgment interest. In fact, Ind.Code § 31–51–4–8(b) provides that "the court shall exclude from the period in which prejudgment interest accrues any period of delay that the court determines is caused by the party petitioning for prejudgment interest." The trial court certainly could deny prejudgment interest based on [petitioner's] acquiescence in [respondent's] proportional reductions and her delay in seeking enforcement.

*Whited,* 859 N.E.2d at 664–65.

 Mother waited nearly ten years from Daughter's emancipation to file an action regarding Father's arrearage. It appears Father had not paid child support for a number of years prior to Daughter's emancipation. Accordingly, we cannot find the court abused its discretion by concluding prejudgment interest was inappropriate based on the number of years Mother acquiesced in Father's failure to pay. *See id.*

4. *Attorney Fees*

The court also has discretion to determine whether to award attorney fees. *Id.* at 665 (citing Ind.Code § 31–16–11–1, which permits court to impose attorney fees when action to collect child support is brought pursuant to Ind.Code ch. 31–16–12). "In assessing attorney fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award." *Sutton v. Sutton,* 773 N.E.2d 289, 298 (Ind.Ct.App.2002). Misconduct by one party that causes opposing party to incur additional costs may also be considered. *Id.*

The court held "no statutory or case law authority exists to award attorney fees" from Father because Mother's action was not "a contempt of court remedy." (Appellants' App. at 3.) Because Ind.Code § 31–16–11–1 gives trial courts authority to award attorney fees in actions to collect child support, that statement by the trial court was incorrect.

Nevertheless, the court discussed whether an award of attorney fees would be equitable and determined Mother was not entitled to a contribution from Father. The court did not consider the factors discussed in *Sutton,* such as the relative incomes of the parties; however, as we find no evidence in the record regarding the income or earning ability of Mother or Daughter, we need not remand for the court to reconsider whether to impose attorney fees on Father. Accordingly, we find no abuse of discretion in the court's denial of Mother's request for attorney fees.

**CONCLUSION**

The trial court erred when it terminated Father's obligation to pay child support prior to Daughter's emancipation. Accordingly, we recalculated Father's arrearage. We affirm the trial court in all other respects.

Affirmed in part and reversed in part.

KIRSCH, J., and RILEY, J., concur.