## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 09 2015, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Mark S. Lenyo<br>South Bend, Indiana | Aladean M. DeRose<br>South Bend, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan Paul Whitlatch,<br>*Appellant,*<br><br>v.<br><br>Priscilla Marie Wolfe,<br>*Appellee.* | September 9, 2015<br><br>Court of Appeals Cause No.<br>71A05-1502-DR-64<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Steven L.<br>Hostetler, Judge<br><br>Trial Court Cause No.<br>71D07-1108-DR-528 |

**Barnes, Judge.**

# Case Summary

Bryan Whitlatch appeals the trial court's modification of child support. Whitlatch's ex-wife, Priscilla Wolfe, cross-appeals the trial court's modification order and its decision to award her only partial attorney fees, and she requests that appellate attorney fees be awarded. We affirm and remand.

# Issues

Whitlatch raises five issues, which we consolidate and restate as:

    I.    whether the trial court properly determined there was a substantial change in circumstances warranting the modification of child support;

    II.    whether the trial court properly considered Wolfe's support of her two prior-born children in calculating child support;

    III.    whether the trial court properly calculated child care expenses; and

    IV.    whether there is evidence to support the trial court's calculation of unreimbursed child care expenses.

On cross-appeal, Wolfe also challenges the trial court's calculation of child care expenses. She raises two additional issues, which we restate as:

    V.    whether the trial court properly ordered Whitlatch to pay only $1,000.00 of her attorney fees; and

    VI.    whether we should remand for the trial court to determine if she is entitled to appellate attorney fees.

## Facts

Whitlatch and Wolfe, who has two children from a prior relationship, were married in 2008. During their marriage, they had two children. Although natives of and domiciled in Indiana, Whitlatch and Wolfe are both members of the United States military and were stationed in California.

In August 2011, Wolfe petitioned for dissolution in Indiana. In November 2011, the marriage was dissolved, and the parties' property settlement agreement was approved by the trial court. Regarding child support, the parties' agreement provided:

> Father will pay for the support and care of the children the sum of $1,000 per month which is a downward deviation from the recommended child support on the attached Indiana Child Support Obligation Worksheet. This deviation is appropriate because it is based primarily upon the high cost of daycare expense for the children which Father will reimburse to Mother directly. . . .

App. pp. 52-53. A child support worksheet was attached to the settlement agreement.

Wolfe's military job required her to work nights for alternating three-month periods. After the dissolution, Whitlatch paid for daycare and kept the children overnight while Wolfe worked nights. *See* Tr. p. 14. In 2012, Wolfe received orders requiring her to relocate to South Carolina. After the move, because of Wolfe's irregular work schedule, the parties' two children were enrolled in fulltime daycare and Wolfe employed a nanny to watch the children when she

worked overnight. Although Whitlatch paid the agreed upon $1,000.00 in child support, he did not reimburse Wolfe for any child care expenses after her move.

[7] On April 8, 2014, Wolfe petitioned to modify child support. On June 4, 2014, the trial court conducted a modification hearing at which both parties had attorneys present. Wolfe participated in the hearing telephonically, and Whitlatch's father, as his power of attorney, participated telephonically because Whitlatch was deployed overseas. At the time of the hearing, Wolfe's two older children were thirteen and eleven, and the parties' two children were five and four. During the hearing, Wolfe agreed to accept payment of half of the child care expenses that she had incurred since the move from Whitlatch.

[8] Following the hearing, the trial court issued an order concluding that a substantial and continuing change in circumstances, namely Whitlatch's inability to care for the children overnight since Wolfe's move and his refusal to contribute toward the child care expenses, warranted the modification of child support. However, the trial court declined to adopt Wolfe's proposed child support worksheet, which included the cost of a nanny when she worked overnight, and adopted a child support worksheet that included only the cost of fulltime daycare. The trial court ordered Whitlatch to pay Wolfe $413.00 per week in child support. Pursuant to Wolfe's agreement at the hearing, the trial court ordered Whitlatch to pay Wolfe $12,959.00, which was half of the of child care expenses accrued following the move. The trial court also ordered Whitlatch to pay $1,000.00 of Wolfe's approximately $4,000.00 in attorney fees.

[9]     Whitlatch filed a motion to correct error asserting that child support was improperly calculated because it included a reduction in Wolfe's income for her two older children, it was based on an incorrect calculation of his income, and the cost of daycare was not accurate. Whitlatch also claimed that the amount he owed for child care was calculated incorrectly and that he should not have been ordered to pay a portion of Wolfe's attorney fees.

[10]    After a hearing in which Whitlatch and Wolfe participated, the trial court modified Whitlatch's child support obligation to $366.00 per week because Whitlatch's income had been incorrectly calculated, Wolfe's credit for her two other children should have been based on their father earning minimum wage, and the daycare costs were less than originally calculated. The trial court rejected Whitlatch's objection to reimbursing Wolfe for half of the previously-accrued child care expenses, but then modified the amount owed to $10,685.37 based on the evidence of those expenses. The trial court also rejected Whitlatch's challenge to the attorney fee order. Both parties now appeal.

## Analysis

[11]    Both parties challenge the trial court's modification of child support. A trial court's calculation of child support is presumptively valid, and child support modifications are reviewed for clear error. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015). In reviewing a modification order, we consider only evidence and reasonable inferences favorable to the judgment, and the order will only be set aside if clearly erroneous. *Id.*

### *I. Changed Circumstances*

[12] Whitlatch argues that there is no basis for modifying child support. Indiana Code Section 31-16-8-1(b) provides:

> Except as provided in section 2 of this chapter, modification may be made only:
>
> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

The trial court concluded that a substantial and continuing change in circumstances occurred because "Father can no longer assist with overnight care of the children and he has refused to assist Mother in the payment of work related daycare costs." App. p. 32.

[13] Whitlatch argues that the trial court erred in modifying child support because the parties' incomes were relatively equal at the time of the dissolution and were relatively equal when Wolfe sought to modify child support. Although he is correct, this assertion does not address the fact that, after the move, Whitlatch

no longer reimbursed Wolfe for the children's daycare expenses and could no longer care for the children overnight.[1]

[14] Whitlatch also claims there has not been a substantial and continuing change in circumstances because the settlement agreement required him to pay only $1,000.00 per month toward child support and child care expenses and he paid this amount. Pursuant to the 2011 child support order attached to the settlement agreement, Whitlatch would have been required to pay $24,804.00 per year in child support. He claims that, if he were required to pay all of the child care costs and $1,000.00 per month in child support, he would pay almost $13,000.00 more per year than the standard child support obligation. According to Whitlatch, "[a] rational man would not agree to pay" that because it would not achieve the intended downward deviation of child support. Appellant's Br. p. 18.

[15] The trial court rejected as "not rational" Whitlatch's argument that the settlement agreement only required him to pay less than half of the standard child support obligation. Tr. p. 42. We agree with the trial court that Wolfe would not have agreed to accept only $1,000.00 per month in child support without any contribution toward child expenses especially when the settlement

---

[1] Whitlatch's assertion that he did not assist Wolfe with overnight care while she lived in California is a request to reweigh the evidence, which we cannot do. And his claim that the daycare costs were slightly less expensive after the move to South Carolina is not relevant to Wolfe's claim that modification was warranted because, after the move, Whitlatch was no longer providing overnight care or reimbursing her for daycare costs.

agreement expressly provides, "This deviation is appropriate because it is based primarily on the high cost of daycare expense for the children *which Father will reimburse to Mother directly*." App. pp. 52-53 (emphasis added). Because the language is clear, we are not persuaded by Whitlatch's argument that the settlement agreement required him to pay Wolfe only $1,000.00 per month.

[16] Whitlatch also argues that the modification must be set aside because neither party submitted child support worksheets into evidence. As Whitlatch points out, "In all cases, a copy of the worksheet which accompanies these Guidelines shall be completed and filed with the court when the court is asked to order support." Ind. Child Support Guideline 3(B)(1). This guideline does not specifically require that child support worksheets be admitted into evidence, and it is clear from the transcript of the proceedings that the parties had submitted child support worksheets to the trial court and that the parties discussed them at length during the hearings. *See, e.g.*, Tr. pp. 31, 47-50. Under these circumstances, the parties' failure to offer their respective child support worksheets into evidence is not reversible error.[2] Whitlatch has not established that the trial court's decision to modify child support is clearly erroneous or that

---

[2] Whitlatch also argues in his reply brief that Wolfe did not prove that she sent daycare receipts to him. Because he raises this issue for the first time in his reply brief, it is waived. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."). Nevertheless, Whitlatch acknowledges Wolfe's testimony that she contacted him several times regarding the payment for daycare expenses.

he was not required to reimburse Wolfe for the daycare expenses pursuant to the settlement agreement.

## II. Prior-Born Children

[17]  Whitlatch also contends that the child support calculation should not have taken into consideration Wolfe's support of her two older children.[3] Whitlatch claims that the trial court "arbitrarily" reduced Wolfe's income by $263.00 per week for her support of the older children. Appellant's Br. p. 16. The evidence does not support Whitlatch's claim.

[18]  "Where a party has a legal support duty for children born prior to the child(ren) for whom support is being established, not by court order, an amount reasonably necessary for such support shall be deducted from Weekly Gross Income to arrive at weekly adjusted income. . . ." Child Supp. G. 3(C)(3). The commentary to this Guideline explains, "A custodial parent should be permitted to deduct his or her portion of the support obligation for prior-born children living in his or her home. It is recommend that these guidelines be used to compute support." *Id.* cmt. 3. The commentary explains that this

---

[3] Whitlatch repeatedly points out that the 2011 child support worksheet did not include a credit for Wolfe's support of the older children. However, he fails to develop a cogent argument supported with citation explaining why Wolfe is precluded from seeking such a credit in a modification of child support. This assertion is waived. *See Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); Ind. App. Rule 46(A)(8)(a).

necessitates the computation of support that would have been paid by each spouse in the former marriage. *Id.* cmt. 3.

[19] Wolfe testified that she does not receive any child support for the older children and that she had not spoken to the older children's father in seven years. She testified that she attempted to collect child support at one point, but he lost his job. She went on to explain that five years ago she tried to track down the children's father but could not find him through social media or the phone numbers she had for him. Based on these facts, it was not clearly erroneous for the trial court to credit Wolfe for her support of the older children.

[20] Further, at the hearing on Whitlatch's motion to correct error, the parties discussed various methods for calculating the credit for Wolfe's support of the older children including what, if any, income should be attributed to the older children's father. Ultimately, the trial court based its calculation on the older children's father earning minimum wage. Whitlatch has not shown this practice was clearly erroneous.

### III. *Work-Related Child Care Expenses*

[21] Both parties challenge the trial court's calculation of work-related child care expenses. Wolfe's work schedule is irregular. She alternates working nights for three months and days for three months, and she works two or three fourteen or sixteen hour shifts per week. On her days off, she is frequently required to go into work. Because of this, the children were enrolled in fulltime daycare, and Wolfe hired a nanny to watch the children when she worked nights.

[22] At the June 2014 hearing, Whitlatch's attorney argued that the amount of work-related child care expenses Wolfe was requesting "would be very unreasonable" because Whitlatch "would have nothing to live on." Tr. p. 29. Taking this argument into consideration, the trial court did not include the cost of the nanny in its calculation. The trial court further explained:

> the Court just finds that $277 a week is the most the Court can factor for child care costs at this point, and $413 a week is just what the Court finds to be an appropriate amount and to be consistent with the guidelines under all of the circumstances of this case.

Id. at 32.

[23] During the hearing on Whitlatch's motion to correct error, the parties discussed work-related child care expenses at length. The trial court rejected Whitlatch's suggestion that he reimburse Wolfe based on the actual cost because that had not worked. The trial court also indicated that it was not revisiting the nanny issue because it was not raised in a motion to correct error. Whitlatch argued that appropriate daycare costs were $106.00 per week based on the number of days Wolfe actually worked. The trial court rejected that argument because Wolfe was entitled to use the daycare after she worked nights. The trial court also noted that the difference in cost between the Monday, Wednesday, and Friday daycare program and the fulltime program was less than $40.00 per week. The trial court concluded, "We're not going to change the child care expense. The father has prevailed on the nanny issue, which I'm a little uncomfortable with to begin with, but I'm going to stick with that. And so

we're going to use that 270 for the child care." *Id.* at 72. The trial court then reduced that amount to $238 per week apparently based on the weekly amount Wolfe actually paid to the daycare.

[24] On appeal, Whitlatch argues that the trial court erroneously calculated the child care expenses to include fulltime daycare because Wolfe did not work every day. Wolfe argues that the trial court erred by not including the cost of a nanny to watch the children when she worked nights.

[25] Child Support Guideline 3(E)(1) provides, "Child care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. . . . Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children. . . ." The commentary explains in part:

> Work-related child care expense is an income producing expense of the parent. Presumably, if the family remained intact, the parents would treat child care as a necessary cost of the family attributable to the children when both parents work. Therefore, the expense is one that is incurred for the benefit of the child(ren) which the parents should share.

Child Supp. G. 3(E) cmt. 1.

[26] Although the child care calculation included fulltime daycare, which was not always necessary, it did not include overnight nanny care, which was

periodically necessary.[4]  It is clear that the trial court was well aware of the circumstances and attempted to balance Wolfe's alternating and unpredictable work schedule, the parties' distance, and Whitlatch's previous refusal to reimburse Wolfe for child care expenses based on his reading of the settlement agreement.  Under these circumstances, we cannot conclude that the trial court's handling of the work-related child care expenses was clearly erroneous.

## IV.  *Unreimbursed Child Care Expenses*

[27]  Whitlatch contends that the evidentiary basis for his half of the unreimbursed child care expenses is insufficient.  The trial court initially ordered Whitlatch to pay $12,959.00 for his share of the child care expenses.  Whitlatch questioned this amount in his motion to correct error.  At the hearing on the motion, Wolfe's attorney acknowledged that the original amount included $3,450.00 for the care of the older children.  Wolfe also explained that she originally provided only the canceled checks to her attorney and that some of the costs were charged to a credit card.  Wolfe stated that she had "every printout for all of [her] transactions at the daycare."  Tr. p. 87.  Wolfe's attorney summarized Wolfe's testimony as having approximately $21,000.00 in unreimbursed child care expenses.  Wolfe agreed to provide documentation of those charges to Whitlatch, and the trial court stated that, if it became necessary, they would

---

[4] Whitlatch suggests that a nanny is not necessary because Wolfe's thirteen-year-old daughter could watch the three younger children while Wolfe works the sixteen-hour night shifts. Although we question the soundness of allowing a thirteen-year-old to regularly babysit three younger children overnight for such long periods of time, we also remain unconvinced that this child should be required to babysit her siblings two to three nights a week in order to reduce Whitlatch's share of work-related child care expenses.

have an evidentiary hearing on this issue. Ultimately the trial court ordered Whitlatch to reimburse Wolfe $10,685.37, which is half of the $21,370.75 in child care expenses that she had accrued since the move, "provided that Mother provides complete documentation of those expenses." App. p. 15.

[28] There is no indication that Wolfe failed to support her testimony with the appropriate documentation or that Whitlatch requested and was denied an evidentiary hearing on the matter. Whitlatch's various challenges to the evidentiary basis are unavailing, and he has failed to establish that the trial court's order is clearly erroneous.

## V. Trial Court's Award of Attorney Fees

[29] The trial court ordered Whitlatch to pay $1,000.00 of Wolfe's $4,000.00 in attorney fees. On appeal, Wolfe argues that the trial court abused its discretion in not ordering him to pay more. Pursuant to Indiana Code Section 31-16-11-1, a trial court may periodically order a party to a child support proceeding to pay a reasonable amount for attorney fees. The award of attorney fees is discretionary. *Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007). "In assessing attorney fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award." *McGuire v. McGuire*, 880 N.E.2d 297, 303 (Ind. Ct. App. 2008) (quotation omitted). Because the trial court was in the best position to consider these various factors, we cannot conclude it abused its discretion in awarding Wolfe only $1,000.00 in attorney fees. *See Whited*, 859 N.E.2d at 665.

## VI. Appellate Attorney Fees

[30] Wolfe also requests appellate attorney fees pursuant to Indiana Code Section 31-15-10-1. Whitlatch claims that there is no basis for awarding attorney appellate attorney fees pursuant to Indiana Appellate Rule 66(E) because his appeal was not frivolous or in bad faith. However, Indiana Code Section 31-15-10-1 and Appellate Rule 66(E) are two distinct bases for an award of appellate attorney fees. *See Townsend v. Townsend*, 20 N.E.3d 877, 881 (Ind. Ct. App. 2014) *trans. denied*. A request for appellate attorney fees based on Indiana Code Section 31-15-10-1 is properly made to the trial court. *See id*. at 881. Thus, we remand for the trial court to determine whether an award of appellate attorney fees is appropriate.

# Conclusion

[31] The trial court properly determined that the modification of child support was appropriate where the parties' settlement agreement required Whitlatch to reimburse Wolfe for daycare expenses and, following Wolfe's move to South Carolina, Whitach could no longer provide care for the children when Wolfe worked overnight and did not reimburse Wolfe for any child care expenses. The trial court did not err in considering Wolfe's support of her two older children when calculating child support or in determining reasonable work-related child care expenses. There is evidence to support the trial court's calculation of unreimbursed child care expenses. Wolfe has not established that the trial court abused its discretion in awarding her only a portion of her

attorney fees, and we remand for a determination of whether she should be awarded appellate attorney fees. We affirm and remand.

[32] Affirmed and remanded.

Kirsch, J., and Najam, J., concur.