885 N.E.2d 59 (2008)
Jamie (Fox) HIESTON, Appellant-Respondent,
v.
STATE of Indiana, INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION CHILD SUPPORT BUREAU, As Assignee of the Support Rights of Gregory Hendricks, Appellee-Petitioner.
No. 54A01-0701-CV-34.[1]
Court of Appeals of Indiana.
April 30, 2008.
*61 James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
VAIDIK, Judge.

Case Summary
Brown v. Brown, 849 N.E.2d 610 (Ind. 2006), established a bright-line test for determining when Social Security disability payments should be credited toward a child support arrearage. Brown determined that a disabled parent is entitled to credit against the parent's child support obligation for Social Security benefits paid to a child effective as to the date the parent files a petition to modify a support order. Accordingly, we find that Mother cannot receive credit for the lump sum payments of retroactive Social Security disability paid to her children for arrearages accumulated before she filed a petition to modify her child support. This is so even though the trial court and the Title IV-D Prosecutor[2] were aware that she had filed a Social Security disability claim nearly two years before she filed her petition to modify support.
Further, Brown dictates that any prospective Social Security disability payments that exceed the modified child support amount are to be considered as a gratuity to the children and shall not be applied as a credit toward any arrearages. As such, the trial court erred in crediting those prospective payments toward the arrearage. We, therefore, affirm in part, reverse in part, and remand.

Facts and Procedural History
During Mother and Father's marriage, they had three children, B.H., A.H., and T.H. Mother and Father's marriage was dissolved in 1992, and Mother initially received custody of the children. In December 1996, the trial court granted Father's previously filed petition to modify, gave him "sole custody of [the] minor children[,]" and ordered Mother to pay $71.00 per week in child support. Appellant's App. p. 4.
Mother was involved in a motor vehicle accident in 2000. After having surgery, Mother's condition deteriorated, and she was eventually unable to work.
*62 Because of her inability to work, Mother was unable to fulfill her support obligation. The State, via the Title IV-D Prosecutor, intervened in the divorce action and filed a Petition for Order to Show Cause against Mother alleging that she was behind on her child support obligation. In November 2002, the parties agreed that Mother was not in compliance with the order and was in arrears in the amount of $5325.00. For a short time thereafter, Mother complied with the trial court's order to pay her child support. However, Mother stopped paying, and in September 2003, the prosecutor filed another Petition to Show Cause against Mother. On November 3, 2003, the trial court entered an order continuing the hearing on the Petition to Show Cause, in which the court noted that Mother had "provided the [Title IV-D Prosecutor] with a doctor's note stating that she [wa]s unable to appear in Court due to her condition" and that the Title IV-D Prosecutor had confirmed that Mother had applied for Social Security disability benefits. Id. at 28. The trial court deferred sanctions for Mother's noncompliance with the support order pending the receipt of medical evidence supporting Mother's disability claim and its outcome. Mother agreed to sign any consent forms for the release of medical records relating to her health condition upon which her Social Security disability claim was based, and she agreed to notify the Title IV-D Prosecutor of any decision on her Social Security disability claim.
In April 2004, the trial court held a show cause hearing at which Mother appeared pro se. During this hearing, Mother informed the trial court that she had hired an attorney to file an appeal of her Social Security disability claim that had been denied, and Mother agreed that the State should have a lien against any lump sum Social Security disability benefits to which she was entitled.
On January 3, 2005, Mother, by counsel, filed a Petition to Stay Child Support. In her petition to stay, Mother noted that she was currently seeking Social Security disability benefits and was awaiting a hearing on her Social Security disability claim, and she asked the trial court to stay her child support obligation pending the outcome of her disability case. That same day, the trial court denied Mother's petition, held a compliance hearing, and noted that no further enforcement proceedings would be scheduled until after Mother's Social Security disability claim was fully adjudicated.
Not until October 28, 2005, nearly two years after the trial court and prosecutor were first advised that Mother had applied for disability payments, did Mother file a petition to modify her child support along with her petition for modification of custody and visitation. This first modification petition requested her support be reduced not because of her disability but because one of her children, B.H., was living with her. On January 17, 2006, Mother filed her second petition to modify her support. Mother also requested a modification of visitation and a request to emancipate B.H.
In March 2006, the Social Security Administration notified Mother that she was considered disabled in September 2002 and was entitled to Social Security disability benefits from March 2003. The Social Security Administration informed Mother that she would receive a lump sum payment of $22,107.38 for retroactive Social Security disability benefits from March 2003 to February 2006 and that she would begin receiving monthly payments of $782.00 beginning in March 2006. Father eventually received word from the Social Security Administration that each of the children would each receive a lump sum payment of $7566.00 for retroactive Social Security benefits and that beginning in *63 May 2006, they each would receive monthly payments of $216.00.[3]
Ultimately, Mother asked the trial court to credit her arrearage for the retroactive lump sum Social Security disability payments to the children. On April 3, 2006, the trial court held a hearing regarding the modification of child support, the determination of arrearages, and the date that B.H. was emancipated. During the hearing, the parties discussed the fact that the Indiana Supreme Court had granted transfer in Brown v. Browna case dealing with whether lump sum retroactive Social Security disability benefits paid to a child should be credit against a child support arrearage. The trial court held the matter under advisement pending the Indiana Supreme Court's opinion in Brown.
On June 29, 2006, the Indiana Supreme Court issued its opinion in Brown and held that "a disabled parent is entitled to credit against the parent's child support obligations for Social Security disability benefits paid to a child, effective as of the date the parent files a petition to modify a support order." Brown, 849 N.E.2d at 612.
On September 22, 2006, the trial court issued an Order, in which it ruled that "[i]n accordance with Brown, [Mother] is entitled to credit against her arrearage for lump sum retroactive Social Security payments paid to the children, and to credit toward ongoing support for the monthly payments received by or for the children." Appellant's App. p. 178-79. The trial court noted that the unresolved issues that remained included: "(a) the extent to which the arrearage should be satisfied by retroactive payments; (b) the effective date of support modification, if any, pursuant to [Mother's] petition to modify; and (c) whether any of the benefits paid should be deemed a gratuity." Id. at 179 (formatting modified).
On October 17, 2006, the trial court issued a Supplemental Order on Applicability of Social Security Disability Payments Toward Child Support Arrearage, in which it concluded that Mother was entitled to a credit for the lump sum retroactive Social Security disability payments to her children against her child support arrearages from the date she filed her first petition to modify support on October 28, 2005. The trial court noted that Mother's October 2005 petition to modify support did not raise her disability as the basis for the modification; nevertheless, the trial court used this date because the State conceded that Mother was entitled to a credit after the date she filed her first petition to modify, which was October 28, 2005. The trial court also modified Mother's weekly child support obligation from $71.00 to $50.79, ruled that the modification was effective as of January 17, 2006, which was the date of her second petition to modify, and determined that any Social Security disability payments received by the children after that date that exceeded the modified child support amount should be credited toward Mother's child support arrearage.
On November 15, 2006, Mother filed her notice of appeal. That same day, the State filed a motion to correct error, arguing that the trial court had erred by ordering that the Social Security disability benefits received by the children since January 17, 2006, in excess of the modified support amount would be credited toward the support arrearage. The trial court did not *64 rule on the motion to correct error, thereby deeming the motion denied. Mother now appeals, and the State cross appeals.

Discussion and Decision
The parties agree that, based on our Supreme Court's holding in Brown v. Brown, the trial court correctly credited some of Mother's lump sum payment of retroactive Social Security disability benefits to her children against her child support arrearage; however, they disagree on the effective date of that credit and whether prospective Social Security disability benefits received by the children that exceed the amount of Mother's modified child support obligation should be credited toward her child support arrearage. Thus, we are faced with two issues on appeal.
Because the trial court entered findings and conclusions, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. Dedek v. Dedek, 851 N.E.2d 1048, 1050 (Ind. Ct.App.2006). We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. Id. The challenger must establish that the trial court's findings are clearly erroneous. Id. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. Id. We do not, however, defer to conclusions of law, and a judgment is clearly erroneous if it relies on an incorrect legal standard. Id.

I. Effective Date of Credit Against Arrearage
Mother argues that the trial court erred when it determined that the effective date of the credit was October 28, 2005 (the date she filed her first petition to modify) instead of November 3, 2003 (the date of the trial court's order in which it acknowledged that it and the Title IV-D Prosecutor had been made aware of Mother's pending Social Security disability claim).[4] The State contends that, based on our Supreme Court's holding in Brown, the trial court properly determined that the effective date of Mother's credit for her retroactive Social Security disability benefits paid to the children was the date of Mother's petition to modify support.
In Brown, our Supreme Court held that "a disabled parent is entitled to credit against the parent's child support obligations for Social Security disability benefits paid to a child, effective as of the date the parent files a petition to modify a support order." Brown, 849 N.E.2d at 612 (emphasis added). Thus, "lump-sum payments of retroactive Social Security disability benefits to children cannot be credited *65 against child support arrearages that are accumulated before the noncustodial parent has filed a petition to modify based on the disability." Id. at 615 (emphasis added). The Brown Court acknowledged that a disabled parent has limited influence over the length of time the Social Security Administration will take in processing the parent's claim and offered the following recommendation:
As in this case, the federal government sometimes takes years to make a decision, and this can lead to a retroactive award of benefits. Under such circumstances the party applying for federal benefits should petition the trial court for modification of a support order based on the apparent inability to work caused by the disability and alert the court to the pending application for benefits. The trial court could defer its ruling on the petition until the federal government decides whether to award the benefits. This would give the trial court the power to modify the support order retroactively to take into account all the changes in circumstance, while at the same time providing the custodial parent with notice that such a modification is a possibility.
Id. at 615 (quoting Jenerou v. Jenerou, 200 Mich.App. 265, 503 N.W.2d 744, 746 (1993)). The Court explained that while the filing of a petition to modify child support on grounds that a Social Security disability determination has been requested entitles a parent to a credit retroactive to the date of that petition in the event of a favorable determination, the filing of such a petition to modify support does not relieve the parent of his or her child support obligation until such time as there is a modification, if any, of the existing child support order. Id.
Mother contends that because our Supreme Court's instruction in Brown  that a disabled parent should file a petition to modify support in order to get credit against the parent's child support obligation for Social Security disability benefits paid to a child was not set forth until three years after she filed her Social Security disability claim, then Brown would not apply and her November 2003 notification of her disability should have served as a de facto petition to modify child support based on the disability. We cannot agree.
Initially, we note that our Supreme Court and this Court have already given retroactive application to the petition to modify support requirement discussed in Brown. See, e.g., Brown, 849 N.E.2d at 616 (remanding the case to the trial court to determine the credit and the effective date of any such credit for retroactive Social Security disability benefits); Dedek, 851 N.E.2d at 1051 (applying the rule enunciated in Brown where Brown was handed down after appellate briefing was completed); Orlich v. Orlich, 859 N.E.2d 671, 676 (Ind.Ct.App.2006) (remanding the case to the trial court to recalculate the parties' child support obligations in light of the guidelines established by our Supreme Court in Brown where Brown was handed down on the day that the appellant filed his notice of appeal).
Furthermore, in determining that the effective date of a credit for retroactive Social Security disability benefits was to be the date the disabled parent filed his or her petition to modify child support, the Brown Court pointed to Indiana Code § 31-16-16-6 and the "mandate of our statute that expressly prohibits a court from retroactively modify[ing] an obligor's duty to pay a delinquent support payment." Id. at 614 (internal quotations omitted). Recently, in Whited v. Whited, 859 N.E.2d 657, 661 (Ind.2007), our Supreme Court, referring to Indiana Code § 31-16-16-6, reemphasized the prohibition *66 against retroactive modification of child support and explained that "[f]or at least seventy-five years, Indiana has held that after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." The Whited Court explained that this prohibition against retroactive modification was a "bright-line rule." Whited, 859 N.E.2d at 661 (citing to Nill v. Martin, 686 N.E.2d 116, 117 (Ind.1997)).
We acknowledge that in November 2003, as part of the show cause proceedings on Mother's failure to pay her child support obligation, Mother notified the trial court and the Title IV-D Prosecutor of her pending Social Security disability claim. However, Brown requires more than just that the trial court and the opposing party be aware of the parent's pending Social Security disability applicationBrown also requires that a petition to modify support be filed. Brown, 849 N.E.2d at 615. While we realize that this result is harsh given the fact that Mother had an arrearage of $5872.00 in November 2003 and then accumulated approximately $8000.00 more in arrearages during the two years before she actually filed a petition to modify support in October 2005, we are bound by precedent and the specific holding in Brown, which we view as a bright-line rule, that "lump-sum payments of retroactive Social Security disability benefits to children cannot be credited against child support arrearages that are accumulated before the noncustodial parent has filed a petition to modify based on the disability." Id. (emphasis added). Accordingly, we conclude that the trial court did not err by determining that the effective date of Mother's credit for her retroactive lump sum Social Security disability benefits against her arrearage was October 28, 2005  the date she filed her first petition to modify support.[5] Given our holding in this case, we note that it is important that Social Security disability attorneys  when filing a disability claim for a client who is a parent required to pay a child support obligation but is unable to do so  should notify the client that he or she should file a petition to modify support.

II. Credit v. Gratuity
The State argues on cross-appeal that the trial court erred when it ordered that any prospective Social Security disability payments that exceed the modified child support amount should be applied as a credit toward the arrearage. The State contends that pursuant to the holdings in *67 Brown and Dedek, the trial court should have ordered that any excess amount should be treated as a gratuity toward the children.
In Brown, when elaborating on general principles applicable to retroactive lump sum Social Security disability benefits, our Supreme Court discussed the doctrine of nonconforming payments, which "generally prohibit[s] child support obligors from attempting to satisfy their future support responsibilities through non-conforming payments that exceed the amount owed the support recipient." Brown, 849 N.E.2d at 615. The Brown Court held that "[w]here all or a portion of lump-sum payments of retroactive Social Security disability benefits paid to children cannot be credited against existing child support arrearages" because they come before the parent filed a petition to modify support, "the doctrine of non-conforming payments dictates the excess amount is properly treated as a gratuity to the children and no credit is granted." Id. at 616. The Brown Court further stated that "[t]his may also be the case where prospective Social Security disability benefits paid to children exceed the amount of the parent's corresponding child support payment." Id. The Court, however, explained that the trial court could modify a disabled parent's child support obligation to reflect the Social Security disability benefits to be received by the child. Id.
In Dedek, we remanded the case to the trial court for application of the rules and principles set forth in Brown and explained that if the children's prospective Social Security disability payments exceeded the disabled parent's modified child support obligation, the excess was to be considered a gratuity. Dedek, 851 N.E.2d at 1051 n. 1.
Here, the trial court modified Mother's child support obligation from $71.00 to $50.79 per week, ruled that the modification was effective as of January 17, 2006, and determined that any Social Security disability payment received by the children after that date that exceeded the modified child support amount should be credited toward Mother's child support arrearage. Based on the holdings in Brown and Dedek, we conclude that the trial court erred by treating the excess of the children's prospective Social Security disability payments as a credit against Mother's child support arrearage. Accordingly, we remand to the trial court with instructions to either order the excess be treated as a gratuity or to "modify [Mother's] child support obligation to reflect the Social Security disability benefits." See Brown, 849 N.E.2d at 616.
Affirmed in part, reversed in part, and remanded.
MAY, J., and MATHIAS, J., concur.
NOTES
[1] As we have pointed out in Lake County Board of Elections & Registration v. Copeland, 880 N.E.2d 1288, 1290-91 (Ind.Ct.App.2008), reh'g denied, and Gilbert v. State, 874 N.E.2d 1015, 1015 n. 1 (Ind.Ct.App.2007), trans. denied, we have recently become aware of some difficulties in receiving the prompt transmission of fully-briefed appeals to our court. Indeed, briefing was complete in the present case on July 31, 2007, when Mother filed her Reply Brief, but the case was not transferred to our court until March 18, 2008-a delay of over seven months. We remind counsel that a link to the Clerk's online docket is available at http://www.in.gov/judiciary/cofc/ and counsel may check the docket to confirm that the case has, in fact, been transmitted to this court after being fully briefed.
[2] The Title IV-D Prosecutor is the state agency responsible for administering the Title IV-D Child Support Enforcement Program of the Federal Social Security Act. Affiliation with that program requires a parent who is seeking assistance and who is entitled to child support to assign to the State his or her right to accrued, present, and pending support payments. See Ind.Code § 12-14-7-1. Thus, the State becomes an active participant in proceedings to collect child support.
[3] The payment of Social security disability benefits for A.H. and T.H. were paid to Father on behalf of the two children. B.H., who was over eighteen at that time, also received a lump sum payment of $7566.00 but no further monthly payments.
[4] Mother contends that she appeared at the show cause hearing on November 3, 2003, informed the trial court of her Social Security disability application, and requested a stay of her child support obligation pending a determination of that application. See Appellant's Br. p. 8, 11. We note, however, that the trial court's November 3, 2003 Order provides that Mother was not present at the hearing. That order indicates that Mother had provided the Title IV-D Prosecutor with a note from her doctor explaining that she was unable to appear in court because of her medical condition, and it does not indicate anything about Mother requesting a stay of her child support. The findings contained in the trial court's order from which Mother appeals also provides that Mother was unable to appear in court on November 3, 2003 and provided a doctor's note explaining her inability to appear and that Mother filed a petition to stay child support on January 3, 2005. Because Mother does not challenge these findings on appeal, we will proceed with the understanding that Mother did not appear at the November 2003 hearing (even though the trial court and the Title IV-D Prosecutor were aware of her Social Security disability application at that time) and that she filed her petition to stay support in January 2005.
[5] Mother also argues that her initial pro se status should provide her with leniency on her failure to file a petition to modify child support and that the Title IV-D Prosecutor had a dutybased on Indiana Professional Conduct Rule 3.8to prepare or tell Mother to prepare a petition to modify support and to inform Mother that she should obtain counsel or that counsel would be appointed for her if she was unable to afford counsel once she informed the Title IV-D Prosecutor of her pending Social Security disability application. Aside from the fact that there was no obligation for the Title IV-D Prosecutor to tell her to file a petition to modify support, Indiana Professional Conduct Rule 3.8 addresses the duties of a prosecutor "in a criminal case" and has no applicability to this case. See Ind. Professional Conduct Rule 3.8.

Last, Mother seems to allege that there was a conflict of interest with the appointed judge pro tem who entered the November 3, 2003, order, which continued Mother's show cause hearing. Aside from Mother's lack of cogent argument, there is nothing in the record to suggestnor does Mother assertthat Mother objected to the appointment of the judge pro tem for that hearing. Accordingly, Mother has waived any such argument. See Southwood v. Carlson, 704 N.E.2d 163, 167-68 (Ind.Ct.App.1999) (noting that a party who does not raise an objection to a potential judicial conflict waives such an argument on appeal).