**In re the Marriage of Harold
E. BEAN, Jr., Appellant–
Respondent,**

**v.**

**Carol A. BEAN, Appellee–Petitioner.**

No. 49A05–0807–CV–390.

Court of Appeals of Indiana.

Feb. 11, 2009.

Michael G. Moore, Indianapolis, IN, Attorney for Appellant.

Kristina Keener Yeager, Indianapolis, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Harold E. Bean, Jr., appeals the trial court's grant of Carol A. Bean's petition for additional relief for funds owed to her by Harold. Harold raises five issues, which we consolidate and restate as:

I. Whether the trial court properly adjudicated certain of Harold's dissolution debts to be nondischargeable for the purpose of federal bankruptcy proceedings;

II. Whether the trial court erred when it ordered Harold to pay half of their children's college expenses; and

III. Whether the trial court abused its discretion in ordering Harold to pay Carol's attorney fees.

We reverse and remand for further proceedings consistent with this opinion.

The relevant facts follow. Harold and Carol's marriage was dissolved in December of 1988. The parties' settlement agreement, which was incorporated in the divorce decree, provided in part:

### III. *PROPERTY SETTLEMENT*

#### A. *REAL ESTATE*

* * * * *

[Harold] shall assume and pay the second mortgage debt on the Marital Residence in favor of Indiana National Bank (the "Second Mortgage"), perform all the terms and provisions of the Second Mortgage to be performed by the mortgagor, and hold [Carol] harmless from any liability, damages, costs or loss including attorney fees, arising out of or connected with the Second Mortgage.

As payment for [Harold's] equity interest in the Marital Residence, [Carol] hereby grants to [Harold] a judgment in the amount of Thirty Thousand Dollars ($30,000) which shall be a lien against the Marital Residence.

* * * * *

### IV. *CUSTODY AND SUPPORT*

#### A. *Custody*

The parties have agreed that they shall have joint legal custody of the minor children of the marriage, Ann Elizabeth Bean, born March 20, 1979[,] and Andrew Blain Bean, born November 16, 1982, and that [Carol] shall have the primary physical custody of the children.

\* \* \* \* \*

### C. *Support*

[Harold] shall pay to [Carol], through the Clerk of Marion County, the total sum of Six Hundred Dollars ($600.00) per month for the support and maintenance of the two (2) minor children. . . .

### D. *Medical Expenses*

[Carol] shall continue, so long as it is available, to carry medical insurance through her employment which provides coverage for the children. Any medical, dental, prescription, optical and other such expense(s) not paid by [Carol's] insurance shall be paid on the basis of [Harold] and [Carol] each paying Fifty Percent (50%) therefor.

### E. *Educational Expenses*

The educational expenses of the children, including Andrew's kindergarten and pre-school, shall be paid on the basis of [Harold] and [Carol] each paying Fifty Percent (50%) therefor.

\* \* \* \* \*

### V. *MISCELLANEOUS PROVISIONS*

\* \* \* \* \*

### B. *TAX RETURNS*

[Harold] and [Carol] shall file a joint income tax return for the years ending December 31, 1986 and December 31, 1987. [Harold] shall be responsible for the entire tax liability for the taxable years 1986 and 1987 and shall hold [Carol] harmless thereon, including principal, interest, penalties, costs and attorney's fees. . . .

Appellant's Appendix at 45–50.

On November 27, 1990, Harold filed a Chapter 7 bankruptcy. Harold listed Carol, the Internal Revenue Service, and Indiana National Bank ("INB") as creditors on his bankruptcy schedule, but Carol, though given notice, did not file a complaint with the bankruptcy court. On December 13, 1990, Harold entered into an agreement with INB reaffirming the second mortgage on the marital residence because, otherwise, INB was going to foreclose on the residence. On May 1, 1991, Harold and Carol signed a promissory note concerning Harold's reaffirmation agreement with INB. Harold's remaining debts were discharged in 1994.

From 1988 to 1995, Harold made only intermittent child support payments. In 1996, he was placed under a child support income withholding order. Around that time, Carol discovered that the IRS had levied her salary and held a tax lien on the marital residence because of Harold's failure to pay their joint tax liability for 1986 and 1987. Harold had also failed to pay off the second mortgage, and INB was threatening to foreclose on the residence. Carol therefore refinanced the residence, and, on October 29, 1996, she paid off the tax liability and second mortgage. To aid Carol in refinancing the residence, Harold filed a pleading with the court permitting her to close on the loan without having to compensate him for his $30,000 lien on the residence.

The parties' two children later attended and graduated from college. Harold paid for some of Ann's college expenses. The children were emancipated on April 12, 2006.

On July 26, 2006, Carol filed a verified petition for contempt citation for non-payment of support obligations and for additional relief for funds owed by Harold. After a hearing held on December 20, 2006, the parties settled the child support, medical and dental, and primary educational expenses owed by Harold to Carol, and, at a hearing on February 22, 2007, Carol withdrew her request to find Harold in contempt. On August 9, 2007, the parties held a final hearing on Carol's remain-

ing petition for additional relief for funds owed by Harold, after which the trial court granted Carol's request for relief.

The trial court found that the tax liability and second mortgage "directly impacted on [Carol's] ability to maintain a residence for her and the parties' minor children," and were nondischargeable in bankruptcy proceedings. Appellant's Appendix at 36. The trial court ordered that Carol be reimbursed in the sum of $128, 142.33 for the tax liability and second mortgage, a sum which includes a $30,000 credit for Harold's lien on the residence.[1] The trial court found that the parties intended to split the costs of their children's college expenses and awarded Carol $16,838.34. Pursuant to the parties' partial settlement agreement, the trial court also awarded Carol $4,744.00 in child support arrearage and $2,914.45 for medical expenses. Thus, the trial court awarded Carol a total amount of $152,639.12, and, in addition to this amount, also awarded Carol $5,055.18 in attorney fees.

**I.**

 The first issue is whether the trial court properly adjudicated certain of Harold's dissolution debts, specifically, the second mortgage and tax liability, to be nondischargeable for the purpose of federal bankruptcy proceedings.[2] A bankruptcy discharge voids judgments based on the personal liability of the debtor. *Cowart v. White,* 711 N.E.2d 523, 528 (Ind.1999), *clarified on reh'g,* 716 N.E.2d 401 (Ind. 1999). However, the Bankruptcy Code explicitly excepts obligations for any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree or other order of a court of record."[3] *Id.* (quoting then 11 U.S.C. § 523(a)(5)). State courts have concurrent jurisdiction with federal courts to determine what constitutes a nondischargeable maintenance or support obligation. *Id.* The main principle guiding bankruptcy

---

**1.** Harold claims that the "trial court erred in not calculating the $30,000 credit [representing his lien on the residence] to any amounts due and owing from Harold to Carol." Appellant's Brief at 16. However, the trial court's order specifically credits Harold with $30,000 in its calculation of the tax liability and mortgage loan, which otherwise would have amounted to $158,142.33. *See* Appellee's Appendix at 27, 35. The trial court also noted that this sum had not been disclosed to the bankruptcy court. *See id.* at 26.

**2.** Harold argues that Carol's claims under the settlement agreement are barred by the statute of limitations. However, Harold argued before the trial court only that Carol's claim regarding the second mortgage, if brought under the promissory note to INB the parties signed in 1991, was barred by the statute of limitations as provided by Ind.Code § 34–11–2–9. *See* Transcript at 134. Harold did not argue that Carol's other claims under the settlement agreement were barred, and, thus, Harold has waived this argument as to other claims.

**3.** This section of the Bankruptcy Code was identical in 1990, when Harold filed for bankruptcy. Since the Indiana Supreme Court handed down *Cowart,* the section has been revised and recodified as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * * * *
>
> (5) for a domestic support obligation;
>
> * * * * *
>
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit....

11 U.S.C. §§ 523(a)(5) & (15) (Supp.2007).

courts in determining whether a debt is nondischargeable alimony, maintenance, or support is the intent of the parties or the state court in creating the obligation and the purpose of the obligation in light of the parties' circumstances at that time. 4 GOLDSTEIN ET AL., COLLIER ON BANKRUPTCY ¶ 523.11[6] (15th ed. rev.2008).

■ At the federal level, several factors are considered to determine whether an obligation stemming from a divorce decree is in the nature of alimony, support or maintenance, or whether it is in fact a property settlement. *Howard v. Moore*, 580 N.E.2d 999, 1003 (Ind.Ct.App.1991). These factors include: (1) whether the obligation is subject to contingencies such as remarriage or death; (2) the nature of the obligation assumed (i.e., for necessaries or luxuries); (3) the structure of the terms of the final decree; (4) whether the payment appears to balance disparate incomes (and the "earnings potential" of each party); (5) whether the obligation is designed to rehabilitate or to assist the spouse's rehabilitation after the divorce; (6) whether the obligation is payable in installments or in a lump sum; (7) whether there are minor children in need of support; (8) whether there was an actual need for support at the time it was awarded; (9) the adequacy of support without the award; (10) whether the award is modifiable; (11) the manner of enforcement of the award (i.e., by contempt or by execution and levy); and (12) whether there was a division of property and allocation of debts between the parties. *Id.* at 1003–1004 (citing *In re Woods*, 561 F.2d 27 (7th Cir.1977); *In re Pattie*, 112 B.R. 437 (Bankr.M.D.Fla.1990); *In re Young*, 72 B.R. 450 (Bankr.D.R.I.1987)). While none of these factors, taken alone, is controlling, they should be considered together in determining the nature of the obligation. *Id.*

A. *Second Mortgage*

Applying the factors outlined in *Howard* to Harold's obligation to hold Carol harmless for the second mortgage, we note that some of the factors support Carol's contention that the obligation was in the nature of maintenance or support. Specifically, the obligation involved a mortgage on the marital residence and thus provided for a necessity. The mortgage represented a periodic payment rather than a lump sum. Also, the parties had minor children in need of support.

On the other hand, the obligation was not subject to contingencies such as remarriage or death. There was no evidence that the obligation was designed to assist with Carol's rehabilitation after the divorce. Furthermore, the parties divided the assets and debts between them, and the second mortgage obligation was assigned to Harold as part of the property division in the settlement agreement. These factors support Harold's contention that the obligation was part of the property division.

However, the trial court heard no evidence on certain, in our opinion, critical, factors. Our review of the record reveals no evidence concerning the incomes and earning potential of the parties at the time they entered into the settlement agreement. Likewise, the parties did not present evidence about the actual need for support, or the adequacy of support without the award. In reviewing the record, we are mindful that

State law generally recognizes that the issues of property division and support are inextricably intertwined. State law governing support and division of property takes into account comparable factors—*primarily the financial resources and needs of the parties.* Similarly, separation agreements often treat support and property division as some-

what interchangeable. A spouse who receives more property may need less support. An obligation denominated as a property settlement may be essential to the support of the recipient of the property. Conversely, an obligation denominated as alimony may be a substitute for property that the obligee would otherwise have received. These trade-offs are often made by the parties with a view toward tax or business consequences.

4 GOLDSTEIN, *supra*, at ¶ 523.11[6] (emphasis added).

In its order concluding that the second mortgage was in the nature of maintenance or support, the trial court noted that

> The difference in the amount of [Carol's] income as a teacher and [Harold's] income from his law practice and appraisal business *were not discussed during any of the hearings held on these issues;* however, based upon the fact that [Harold] was able to secure an additional real estate property to his new residence, while listed as an owner on three others, *it is not a far stretch to come to the conclusion that his income exceeded that of [Carol's].*

Appellant's Appendix at 35 (emphasis added). We are unable to draw such a conclusion. Without an adequate record to review the financial situation of the parties at the time they entered into the settlement agreement, we cannot determine whether the second mortgage obligation assigned to Harold was intended to be in the nature of maintenance or support, or to be part of the property division. Accordingly, we reverse the trial court's award reimbursing Carol for her payment of the second mortgage and remand for an evidentiary hearing consistent with this opinion. *Cf. Howard,* 580 N.E.2d at 1005 (holding that it was not erroneous for the trial court to conclude that the second

mortgage obligation was in the nature of support considering the parties' disparate earnings potential along with the amount of support and maintenance awarded to the former spouse).

## B. *Tax Liability*

In determining whether Harold's obligation to hold Carol harmless for the parties' joint tax liability for 1986 and 1987 was dischargeable in bankruptcy, we find *Cowart* instructive. In *Cowart,* the parties' divorce decree ordered Cowart to pay $1,171 in back property taxes to redeem property awarded to White and an unspecified amount of past due taxes on other properties Cowart had previously been ordered to pay. 711 N.E.2d at 529. Eight days after the decree was entered, Cowart filed for bankruptcy, listing White and her attorney as creditors on his bankruptcy schedule, but they did not file a complaint to determine the dischargeability of the debts. Cowart failed to pay the taxes, and White paid them in an effort to prevent tax sales. White then filed a petition to modify the decree, which the trial court denied, and to find Cowart in contempt, which the trial court granted, ordering Cowart to reimburse White. The Indiana Supreme Court reversed, reasoning:

> The obligation to reimburse White for back taxes is not nondischargeable in the nature of a "maintenance or support" obligation. The 1996 decree essentially divided the responsibility to pay the debts of the marriage between Cowart and White. The court assigned the responsibility to pay the taxes to Cowart. There is no indication that the trial court intended this obligation to be in the nature of maintenance or support. Moreover, the taxes cannot be characterized as providing for White's daily needs because they do not secure her residence. In sum, Cowart's obligation to White to pay the taxes under the 1996

decree was discharged as a pre-petition debt.

*Id.*

In the present case, as in *Cowart,* the divorce decree divided the marital assets and debts between parties. Carol was responsible for the first mortgage debt. The settlement agreement assigned the responsibility to pay the tax liability for 1986 and 1987 to Harold. There is no indication that this obligation was intended to be in the nature of ongoing maintenance or support. The liability is of the type to be paid in a lump sum or over a short period of time. At the time the parties entered into the settlement agreement, payment of the tax liability was not necessary to secure the residence. However, the IRS later held a tax lien on the marital residence. The trial court found that the threat of levy and sale of the residence, leaving Carol and the children without a place to live, led Carol to refinance the house and pay the second mortgage and tax liabilities. The court then concluded that Harold's repayment of the taxes and hold harmless agreement provided for the daily needs of Carol and the children.

However, the court failed to consider the critical factors delineated in Part IA, *supra.* Specifically, the trial court heard no evidence concerning the incomes and earning potential of the parties, the actual need for support, or the adequacy of support without the award at the time they entered into the settlement agreement. Although, in light of *Cowart,* the tax liability appears to be more in the nature of a property division than of maintenance or support, we are unable to make this determination without further evidence. Accordingly, we reverse the trial court's award reimbursing Carol for her payment of the tax liability and remand for an evidentiary hearing consistent with this opinion.

## II.

■ The next issue is whether the trial court erred when it ordered Harold to pay half of their children's college fees and expenses. Harold suggests that, because the provision requiring the parties each to pay 50% of the children's educational expenses does not specifically provide for payment of college expenses, the parties made no agreement concerning college expenses. He further argues that the trial court did not have the authority to modify the settlement agreement to require him to pay for half of the children's college expenses because Carol did not file a petition to modify. Carol, on the other hand, argues that the educational expenses provision in the settlement agreement includes college expenses.

■ Ind.Code § 31–16–6–2(a) provides that an educational support order may include amounts for the child's education in elementary and secondary schools and at postsecondary institutions, taking into account the child's aptitude and ability, the child's reasonable ability to contribute to payment of educational expenses, and the ability of each parent to meet those expenses. However, it is clear that an educational support order cannot be imposed for an unlimited period of time. *Brodt v. Lewis,* 824 N.E.2d 1288, 1291 (Ind.Ct.App.2005). In this regard, Ind. Code § 31–16–6–6(a) provides for the termination of child support orders when the child becomes twenty-one unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in

effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

Considering this statute, the Indiana Supreme Court has held that "[t]he statutory language is clear. Where educational needs are expressly included in a support order enacted prior to a child's emancipation or attaining age 21, the trial court is authorized to continue to address such educational needs." *Brodt*, 824 N.E.2d at 1292 (quoting *Donegan v. Donegan*, 586 N.E.2d 844, 845 (Ind.1992), *clarified on reh'g*, 605 N.E.2d 132 (Ind.1992)).

In *Brodt*, the parties entered into a settlement agreement when their child was barely six months old, agreeing that father would pay $35 per week of child support and "one-half (1/2) of the child's school supplies, book rental and child care center expenses." *Id.* at 1290. Some twenty years later, the child began attending a community college. After the child had celebrated her twenty-first birthday, mother filed a petition to modify father's child support obligation asking that father contribute to the child's postsecondary educational expenses, but the trial court denied the petition. On appeal, mother argued that father was obligated to pay half of the child's college expenses under the original support order. We affirmed the trial court, reasoning:

Typically, educational needs receive an expansive interpretation in the case law and generally include[ ], among others, tuition, books, lab fees, supplies, and student activity fees. *Sebastian v. Sebastian*, 798 N.E.2d 224, 230 (Ind.Ct. App.2003) (quoting *Warner v. Warner*, 725 N.E.2d 975, 978 (Ind.Ct.App.2000)). However, whereas the definition of educational needs clearly seems to be geared towards college life, our reading of the parties' 1983 settlement agreement appears to focus solely upon the costs related to elementary and secondary education where the charges for school supplies and book rental are more common than in post-secondary education. As included in the Commentary to Ind. Child Support Guideline 6, Extraordinary Expenses, regular elementary and secondary school expenses are covered by the basic child support obligation. Moreover, an educational support order is premature when a child is too young to assess her aptitude and ability, such as [the child in the present case] was at the time the agreement was made. *See* I.C. § 31–16–6–2; *Moss v. Frazer*, 614 N.E.2d 969 (Ind.Ct.App. 1993). Of course, this does not preclude the parties from agreeing to payment of amounts in addition to the basic child support obligation. Nevertheless, here, based on the language in the original

settlement agreement, we find the reference to school expenses to be of such a different type and magnitude than college expenses that college expenses could not have been contemplated by the parties as being part of the agreement. Therefore, we find that the 1983 agreement between the parties did not address Lindsey Jo's educational needs in the sense required for subsequently ordering payment of college expenses. See I.C. § 31–16–6–2.

*Id.* at 1292.

In the present case, upon the dissolution of their marriage, when the parties' children were six and nine years old, the parties agreed that the "educational expenses of the children, including Andrew's kindergarten and pre-school, shall be paid on the basis of [Harold] and [Carol] each paying Fifty Percent (50%) therefor." Appellant's Appendix at 49. As in *Brodt*, the parties' agreement, which specifically references Andrew's kindergarten and pre-school expenses but does not mention post-secondary expenses, appears to focus solely on costs related to elementary and secondary school education. Accordingly, we find the reference in this agreement to educational expenses to be of such a different type and magnitude from college expenses that college expenses could not reasonably have been contemplated by the parties as being part of the agreement.

In reaching this conclusion, we are mindful of our holding in *Moss v. Frazer*, 614 N.E.2d 969 (Ind.Ct.App.1993). In *Moss*, although the parties did not have a settlement agreement, the dissolution decree stated that the father, the non-custodial parent, "shall pay one-half of all of said child's educational expenses until said child reaches 18 years of age, and he shall pay one-half for a four-year college education for said child." *Id.* at 970. The parties did not contemplate at the time of

the divorce that the child would attend private school. The mother later sent the child to a private school and, after the child had enrolled and incurred substantial expenses, the mother sought to require the father to pay one-half of those expenses.

We held in *Moss* that the dissolution decree did not require the father to pay for one-half of the child's education at a private school. We explained:

[W]e find that [mother]'s reading of the decree is too expansive. Under her construction, she could send [child] to any school, incur any expense for his education she desired, wait until after the expenses had accrued and then force [father] to pay his share, all without ever having the propriety of those expenses scrutinized by the trial court. We do not believe the trial court intended to give such sweeping, unfettered discretion to [mother] in the original dissolution decree. *Given the clear legislative policy of requiring judicial approval of extraordinary educational expenses before they are incurred and before the noncustodial parent is ordered to pay a share of those expenses,* it would be unfair to read the original dissolution decree as awarding [mother] the unilateral discretion to incur any educational expense for [child] she wanted.

*Id.* at 972 (emphasis added). We reach the same conclusion here. The parties' settlement agreement did not specify that Harold would be responsible for half of the children's college fees and expenses, and Carol never filed a petition to modify the agreement. By not insuring, in advance, that Harold was legally obligated to pay for the children's education, Carol ran the risk of an adverse decision. *See Giselbach v. Giselbach,* 481 N.E.2d 131, 134 (Ind.Ct. App.1985). Accordingly, we conclude that the trial court erred when it ordered Ha-

rold to pay half of the children's college fees and expenses after the fact.

## III.

The final issue is whether the trial court abused its discretion in ordering Harold to pay Carol's attorney fees. Harold argues that the trial court did not explain its reasoning in awarding attorney fees to Carol and "engaged in no consideration of the relative economic resources of the parties before it awarded the fees." Appellant's Appendix at 18.

Ind.Code § 31–16–11–1, the statute regarding attorney fees in family law matters, is discretionary and provides that the trial court *may* order a party to pay a reasonable amount for the other party's attorney fees. *Whited v. Whited,* 859 N.E.2d 657, 665 (Ind.2007). A determination regarding attorney fees in family law matters is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. *See id.* In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. *Id.* The trial court, however, need not cite the reasons for its determination. *Id.*

In granting the award of attorney fees, the trial court heard no evidence concerning the parties' resources, economic condition, or ability to engage in gainful employment. Accordingly, we reverse the award of attorney fees and remand to the trial court to hold a hearing on these factors.

For the foregoing reasons, we reverse the trial court's grant of Carol's petition for additional relief for funds owed to her by Harold concerning the tax liability, second mortgage, college expenses, and attor-

ney fees, and remand for a hearing consistent with this opinion.

Reversed and remanded.

CRONE, J., concurs.

ROBB, J., concurs in part and dissents in part with separate opinion.

ROBB, Judge, concurring in part, dissenting in part with opinion.

I concur with the majority's decision to reverse the trial court's order regarding college expenses. I also concur in the majority's decision to reverse the trial court's order that Harold reimburse Carol for her payment of the second mortgage and tax liability and that he pay her attorney fees, but respectfully dissent from the majority's decision to remand the case for a further evidentiary hearing on those matters.

Carol was the party seeking a determination of whether Harold's obligations were discharged in his bankruptcy. The "default" is that a debt is discharged in bankruptcy unless it is specifically excepted from discharge by statute. *See Howard,* 580 N.E.2d at 1002. Therefore, a creditor objecting to the discharge of a debt bears the burden of proving by a preponderance of the evidence that the debt falls within the statutory exception. *Id.* "To determine whether an obligation to a former spouse is dischargeable in bankruptcy, the court must determine whether the dissolution decree intended the obligation to be maintenance for the spouse or to effect a division of property and debts." *Id.* at 1003. The majority has set out the factors that are to be considered in making this determination. *See* op. at 260–61.

I note first that I disagree with the standard employed by the trial court in making its determination. The trial

court's order indicates that in determining dischargeability:

> courts look to various factors including the parties' imbalance in income, expenses and earning capacity and whether the failure of the debtor to pay would impair the nondebtor spouse's ability to maintain his or her expected standard of living or support the couple's children.

Appellant's Appendix at 33. Nowhere in the order does the trial court discuss the complete list of factors to be considered in determining dischargeability. Theoretically, every obligation—financial and otherwise—from one ex-spouse to another impacts the ability to maintain the former standard of living and support children, but that does not necessarily make the obligation in the nature of support. Rather, an obligation is only support if it meets specific criteria. *See Cowart,* 711 N.E.2d at 528–29 (holding that trial court's reasoning that all obligations under the decree were in the nature of maintenance or support because debtor's failure to pay in turn affected ex-spouse's ability to pay child support was not a proper basis for concluding the obligations were nondischargeable: "[t]he fact that the payment by the debtor may result in the former spouse's having funds available to pay child support is not sufficient to render the obligation one 'in the nature of maintenance or support.' ").

Further, I disagree with the majority that remand is appropriate. The trial court acknowledged in its order, as the majority does in its opinion, that no evidence was presented regarding several of the salient factors for determining dischargeability. *See* Appellant's App. at 35; Op. at 262. The factors for which there is evidence in Carol's favor are not sufficient to override the factors for which the evidence does not support her position and for which there is no evidence at all.

Rather than being a case where the evidence was presented but the trial court failed to make the appropriate findings—in which case I would agree remand was proper—this is a case where the proponent of the motion failed to prove her case. Carol did not present an adequate basis upon which the trial court could evaluate all the relevant factors and determine whether the dissolution decree intended Harold's obligations to be maintenance or property division. Nor, as the majority acknowledges, did Carol present evidence to support an award of attorney fees. *See* op. at 266. Carol is not entitled to a "second bite of the apple" in order to prove her case. I would therefore hold that Harold's obligations are dischargeable and that Carol is to pay her own attorney fees and I would simply reverse the trial court's order.