**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL D. CHESTNUT**
Michael D. Chestnut, Attorney at Law, P.C.
Washington, Indiana

ATTORNEY FOR APPELLEE:

**JILL DOGGETT**
Hart Bell, LLC
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH B. FOWLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  42A05-1402-DR-54 |
| | ) | |
| KATHLEEN L. FOWLER, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE KNOX CIRCUIT COURT
The Honorable Sherry B. Gregg Gilmore, Judge
Cause No. 42C01-9505-DR-135

**June 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Joseph Fowler ("Father") appeals the denial of his motion to correct error, which challenged an order for college expenses and child support arrearage with respect to A.F. ("Child"), the only child of Father's marriage to Kathleen Fowler ("Mother"). We reverse.

**Issues**

Father presents two issues for review:

I.      Whether the calculation of child support arrearage is erroneous; and

II.     Whether the trial court erroneously construed the dissolution settlement agreement to provide for Father's payment of one-half of Child's college expenses.

**Facts and Procedural History**

When Mother and Father divorced in 1995, they reached an agreement with respect to the custody and support of their then-three-year-old child. Mother was given physical custody of Child and Father was to pay $114.00 per week (increasing to $125.00 per week as of January 1, 1996 in the event Father did not exercise parenting time).[1]

On September 21, 1998, Mother – through the Knox County Prosecutor's Office, IV-D Division – filed an "Affidavit for Contempt Citation" acknowledging her direct receipt of child support payments in the amount of $5,273.00, stating that child support had been modified to $86.00 weekly on July 23, 1998, and claiming that Father had failed to make a payment since August 31, 1998. (App. 26.)[2] According to the Knox County Clerk's

---

[1] It is undisputed that the increase took effect because parenting time was not exercised.

[2] The referenced file-stamped document appears in the Appendix and neither party contests its authenticity. Mother provided a copy of a "Civil Court Docket, Knox Circuit Court" that disclosed the filing on September

"Payment History" of record, Father paid $86.00 weekly for several years and then increased his payments to $121.00 weekly in April of 2004.[3] (App. 39.) He continued his child support payments through June of 2013, although Child had been emancipated by law on July 1, 2012.[4]

On January 23, 2013, Mother filed her "Verified Petition for Educational Support Order, Determination and Payment of Child Support Arrearage, and Petition to Modify Dissolution Decree." (App. 1.) The matter was set for hearing. However, after a status conference with counsel for the parties, and the submission of "arguments to the Court in writing," the trial court determined that it would rule on the matter without further hearing. (App. 3.) It appears that both parties agreed that the trial court would examine "information obtained from 4-D Prosecutor's Office regarding arrearage calculation." (App. 3.)

The parties agreed that Father had paid $92,725.00 in child support. Father claimed that his obligation had been $80,493.00 and thus he had overpaid by $12,232.00. On the other hand, Mother claimed that Father's obligation had been $108,846.00 and thus he still owed $16,121.00. The trial court ordered Father to pay a child support arrearage of $5,088.19.[5]

---

21, 1998. However, the Chronological Case Summary in the Appendix does not include entries between the May 11, 1995 entry "Case Opened as a New Filing" and the January 24, 2013 entry of appearance of Mother's attorney.

[3] According to Father, he unilaterally increased his child support payments because he was earning more money and knew more than $86.00 weekly was needed to raise a child.

[4] See Ind. Code § 31-16-6-6(a).

[5] The trial court appears to have relied upon a recalculation by the Knox County child support enforcement office. The trial court's order stated that there had been "consultation" with the "current IV-D Paralegal

3

With respect to college expenses, Mother had sought to have Father held responsible for one-half of Child's expenses at Purdue University for the fall of 2012 through the spring of 2014, Child's anticipated graduation date.[6] Mother requested that the trial court construe the parties' settlement agreement to provide for an equal division of all claimed educational expenses, including tuition, fees, room, board, and parking. Mother listed – but did not present evidence of – total expenditures for educational expenses. The trial court's order provided in this regard:

> [T]he respondent's obligation shall apply to the fall of 2012, spring of 2013, summer session of 2013, fall of 2013, and to the spring of 2014. Pursuant to the evidence submitted by the petitioner, the expenses for the fall of 2012 were $18,059.00, for the spring of 2013 $5,512.28, for the summer of 2013 $1,497.00, for the fall of 2013 $11,311.16, and for the spring of 2014, the figures are still unknown. The expenses for the spring of 2014 shall be provided to the respondent as soon as possible after they are determined.

(App. 25.) Father filed a motion to correct error, which was denied. This appeal ensued.

**Discussion and Decision**

Standard of Review

We generally review the denial of a motion to correct error for an abuse of discretion. Kornelik v. Mittal Steel USA, Inc., 952 N.E.2d 320, 324 (Ind. Ct. App. 2011), trans. denied. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Hawkins v. Cannon, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), trans. denied.

---

handling this cause." (App. 24.)

[6] Father asserted, in written argument, that Child had repudiated her relationship with Father, relieving him of the obligation to contribute to college expenses. The trial court rejected this argument.

4

## Child Support Arrearage

Father contends that his child support obligation was $114.00 weekly in 1995; $125.00 weekly in 1996, 1997, and part of 1998; and $86.00 weekly after he, Mother, and the Knox County Prosecutor's Office executed a modification agreement. According to Father, he has overpaid basic child support but considers the overpayment a voluntary contribution toward Child's college expenses.

According to Mother, Father's obligation remained at $125.00 weekly regardless of the modification agreement because the trial court's file does not reflect a motion for modification or order thereon.[7] Mother disregards any effect of her Affidavit for Contempt, filed in the Knox Circuit Court on September 21, 1998. Therein, she averred in pertinent part:

> That on the 23rd day of July, 1998, support was modified, and Respondent was ordered to pay $86.00 per week for the support and maintenance of the parties' minor child.

(App. 26.) At that time, Mother asked for a judgment of child support arrearage and interest thereon, computed with post-July 23, 1998 child support assessed at $86.00 per week. Many years later, Mother sought to take a contrary position and have arrearage re-calculated with a higher child support obligation.

Mother attempts to distance herself from the Affidavit for Contempt Citation and its representations by claiming that "there is no evidence of an agreement between the parties"

---

[7] Neither Father nor Mother claim to have knowledge of the Deputy Prosecutor's handling of the modification agreement after its execution. It is unknown whether or not the Prosecutor's office submitted documentation to the trial court, or whether a court order was inadvertently misplaced. It is agreed that no modification order is currently in the trial court files.

to reduce child support and she "allowed the State to keep track of the Father's arrearage." Appellee's Brief at 3. However, the Affidavit was signed by Mother in addition to Deputy Prosecutor Gary Brock.

"An attorney can make an admission to a trial court that is binding upon his client." Heyser v. Noble Roman's Inc., 933 N.E.2d 16, 19 (Ind. Ct. App. 2010), trans. denied. A binding admission must be one without ambiguity or doubt. Id. Once made, such an admission is "binding … throughout the lawsuit." Id. at 20. Here, there is no ambiguity. A deputy prosecutor, representing Mother in a child support claim, signed an affidavit filed with the court in 1998 attesting that child support had been modified on July 23, 1998. Many years after Father relied upon the admission of Mother and her attorney, Mother faults Father for failing to ascertain and correct an omission in the court's file. Because Mother's attorney made a binding admission, to which Mother expressly and separately consented by her signature, Father is not burdened to locate further documentation.

According to records of the Knox County Clerk, Father overpaid his basic child support obligation. He properly asserts that the overpayment may be treated as a gift. See Eisenhut v. Eisenhut, 994 N.E.2d 274, 277 (Ind. Ct. App. 2013) (recognizing that, while involuntarily overpayments of child support may be subject to reimbursement, voluntary overpayments are considered gratuitous and not subject to reimbursement).

## College Expenses

Mother filed her "Verified Petition for Educational Support Order" on January 23, 2013. (App. 1.) Pursuant to Indiana Code section 31-16-6-6(c), if a court has established a

6

duty to support a child in a court order issued before July 1, 2012, the parent, guardian, or child may file a petition for educational needs until the child becomes twenty-one years of age.

Father contended that he should not be responsible for a portion of expenses incurred prior to the filing of this petition (apart from his gratuitous contribution of excess child support). Mother contended that Father had agreed to pay a one-half share of Child's college expenses, pointing to language of the 1995 separation agreement:

> Husband and Wife agree to equally share all education expenses of [Child] and when she is of driving age, to equally share all costs of driver's license, of a vehicle and maintenance of the vehicle.

(App. 35-36.)

Indiana Code § 31-16-6-2 provides for an educational support order:

(a) The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:

(A)    the child's aptitude and ability;

(B)    the child's reasonable ability to contribute to educational expenses through:
    (i)    work
    (ii)    obtaining loans; and
    (iii)    obtaining other sources of financial aid reasonably available to the child and each parent; and

(C)    the ability of each parent to meet these expenses.

Father argues that, in 1995, he and Mother could not have assessed Child's aptitude and ability to attend college and thus their agreement was not intended to govern college expenses.

Father directs our attention to Brodt v. Lewis, 824 N.E.2d 1288 (Ind. Ct. App. 2005). In Brodt, the parties had entered into a settlement agreement for the support of their six-month-old child, whereby the father was to pay $35.00 per week in child support and "one-half (1/2) of the child's school supplies, book rental and child care center expenses." Id. at 1290. A subsequent modification order included no reference to educational expenses. Id. at 1292. After the child had turned twenty-one, and had been attending a community college for one year, the mother filed a petition to modify the father's child support obligation such that he would contribute to college expenses. Id. The trial court denied the petition, and the mother appealed, claiming that the father was obligated to pay half of the child's college expenses under the original support order.

A panel of this Court affirmed the trial court, reasoning:

Typically, educational needs receive an expansive interpretation in the case law and generally includes, among others, tuition, books, lab fees, supplies, and student activity fees. Sebastian v. Sebastian, 798 N.E.2d 224, 230 (Ind. Ct. App. 2003) (quoting Warner v. Warner, 725 N.E.2d 975, 978 (Ind. Ct. App. 2000)). However, whereas the definition of educational needs clearly seems to be geared toward college life, our reading of the parties' 1983 settlement agreement appears to focus solely upon the costs related to elementary and secondary education where the charges for school supplies and book rental are more common than in post-secondary education. . . . Moreover, an educational support order is premature when a child is too young to assess her aptitude and ability, such as Lindsey Jo was at the time the agreement was made. See I.C. § 31-16-6-2; Moss v. Frazier, 614 N.E.2d 969 (Ind. Ct. App. 1993). Of course, this does not preclude the parties from agreeing to payment of amounts in addition to the basic child support obligation. Nevertheless,

8

here, based on the language in the original settlement agreement, we find the reference to school expenses to be of such a different type and magnitude than college expenses that college expenses could not have been contemplated by the parties as being part of the agreement. Therefore, we find that the 1983 agreement between the parties did not address Lindsey Jo's educational needs in the sense required for subsequently ordering payment of college expenses. See I.C. § 31-16-6-2.

Id. at 1292.

Subsequently, in Bean v. Bean, 902 N.E.2d 256 (Ind. Ct. App. 2009), the father alleged on appeal that the trial court had erred by ordering him to pay one-half of the children's college expenses, after their graduation, based upon the settlement language: "The educational expenses of the children, including Andrew's kindergarten and pre-school, shall be paid on the basis of [Harold] and [Carol] each paying Fifty Percent (50%) therefor." Id. at 259.

We reversed the order for the payment of college expenses "after the fact." Id. at 266. In so doing, we reasoned:

As in Brodt, the parties' agreement, which specifically references Andrew's kindergarten and preschool expenses but does not mention post-secondary expenses, appears to focus solely on costs related to elementary and secondary school education. Accordingly, we find the reference in this agreement to educational expenses to be of such a different type and magnitude from college expenses that college expenses could not reasonably have been contemplated by the parties as being part of the agreement.

Id. at 265. The Bean Court found persuasive the language of Moss v. Frazer, 614 N.E.2d 969, 972 (Ind. Ct. App. 1993), wherein the mother had requested a contribution to private school tuition:

Given the clear legislative policy of requiring judicial approval of extraordinary educational expenses before they are incurred and before the

9

noncustodial parent is ordered to pay a share of those expenses it would be unfair to read the original dissolution decree as awarding [mother] the unilateral discretion to incur any educational expense for [child] she wanted.

Ultimately, the Bean Court concluded that the settlement agreement "did not specify that Harold would be responsible for half of the children's college fees and expenses," Carol had not petitioned to modify the agreement, and, by her failure to insure Harold's legal obligation in advance, she "ran the risk of an adverse decision." Id. at 265.

In this case, Mother observes that there is an absence of language suggestive of elementary or secondary educational expenses, such as a reference to book rental. The contemplated time frame includes the period of time in which Child would be old enough to drive. Given the broad reference to dividing "education expenses" and the expansive time frame, it may reasonably have been within the contemplation of the parties that they would someday share the payment of college expenses, at least tuition.

Nonetheless, there is a failure of proof that such expenses were incurred, appropriate, and reduced by Child's contribution. The parties apparently agreed to submit "written summary arguments to the Court." (App. 2.) (emphasis added.) Mother's "Final Argument" document includes a paragraph listing "college expenses, less scholarships" of:

Fall 2012 Expenses:      $18,059.00
Spring 2013 Expenses:      5,512.28
Summer 2013 Expenses:      1,497.00
Fall 2013 Expenses:       11,311.16
Spring 2014 Expenses:     Unknown at this time

(App. 13.) Purportedly, these figures included tuition, fees, meal plans, housing, parking, and text books.

There was no stipulation, testimony, affidavit, or documentary evidence presented to establish Child's aptitude and ability or her reasonable ability to contribute to her educational expenses through work, loans, or other sources. There were no bills or receipts submitted to the trial court. No evidence was elicited regarding the ability of Father or Mother to contribute to Child's post-secondary education.

We will not construe the settlement agreement, drafted when Child was three years old, to impose upon Father an unfettered obligation to pay college expenses. Moreover, we cannot say that Father and Mother contemplated, in their settlement agreement, that any and all expenses claimed in a cursory fashion would be divisible and Mother would be relieved of any burden of proof. We conclude that the trial court erred in ordering the payment of college expenses claimed without evidentiary support.

## Conclusion

Mother, through her former attorney, a deputy prosecutor, admitted to the trial court that Father's child support obligation had been modified. This admission is binding. Father paid in excess of his obligation. As he did so voluntarily, it is deemed a gift. Even if the settlement agreement were construed to include payment of college expenses, Father cannot properly be ordered to pay unsupported claims.

Reversed.

KIRSCH, J., and MAY, J., concur.

11