## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 27 2018, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Debra Lynch Dubovich
Levy & Dubovich
Merrillville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| IN RE: THE MARRIAGE OF: | March 27, 2018 |
| Melissa Martell, | Court of Appeals Case No. 45A03-1709-DR-2114 |
| *Appellant,* | Appeal from the Lake Superior Court |
| v. | The Honorable Elizabeth F. Tavitas, Judge |
| Michael Martell, | Trial Court Cause No. 45D03-1309-DR-701 |
| *Appellee.* | |

**Barnes, Judge.**

## Case Summary

[1]     Me.M. ("Mother") appeals the trial court's order denying her request for permission to apply certain found monies to Mi.M.'s ("Father") purported child

support arrearage and awarding attorney fees to Father. We affirm in part and reverse in part with instructions.

## Issues

The issues before us are:

    I.      whether the trial court erred in denying Mother's request for permission to apply certain found monies to Father's purported child support arrearage; and

    II.     whether the trial court erred in awarding attorney fees to Father.

## Facts

On January 9, 2009, Mother and Father opened a joint account ("Account") for the benefit of their minor child, M.M. Mother filed for divorce on September 3, 2013. At that time, the parties agreed to sweep the existing Account balance into an investment account for the benefit of all three of the parties' children. When the parties appeared for a final hearing on February 25, 2015, the Account balance was $2.19. Pursuant to the divorce decree entered on May 19, 2015, Father's imputed weekly gross income was $2,000.00, and he was to pay $327.00 each week in child support. The decree did not require either party to maintain or contribute to the Account.

[4] The parties' post-divorce relationship is not amicable, and they do not speak to one another.[1] After finalization of the divorce, Father began to use the Account "as [his] own savings account." Tr. Vol. II p. 55. It is undisputed that he made all post-decree deposits, totaling approximately $46,500, to the Account.

[5] In January 2016, an allegation of abuse was made against Father, resulting in a Child in Need of Services ("CHINS") investigation by the Lake County Department of Child Services and criminal charges. Father lost his job because of the allegation. He secured new employment in May 2016, but he lost that job months later because of the allegation. Father subsequently stopped paying child support. He collected unemployment benefits for twenty-five weeks during the pendency of the post-decree period. Although Father earned over $38,000 during that period, he paid virtually no child support. Father asked the trial court to modify child support at each change in his income during the pendency. After pending for almost a year, the criminal charges were dismissed on the eve of Father's scheduled trial in December 2016.

[6] On January 23, February 3, and June 15, 2017, the trial court conducted hearings on various pending petitions, including

> Father's Petition to Modify [Parenting Time and Child Support]
> filed on May 3, 2016; Mother's Petition to Modify and/or
> Suspend and Restrict Parenting Time and Mother's Petition for
> Contempt Citation and Rule to Show Cause, both filed on May

---

[1] As the trial court stated, "At the time of the divorce, this family experienced destructive conflict." App. Vol. II p. 90.

11, 2016; and Father's Amended Petition for Modification filed on May 15, 2017.

*Id*. at 87. Among the questions before the trial court were: (1) whether Father was in contempt of court for failing to pay child support; (2) whether Father's child support obligation should be modified; and (3) whether either party should be ordered to pay attorney fees.

[7] On June 20, 2017, Mother discovered a balance of nearly $9,500 in the Account. On advice of her counsel, who contemporaneously advised Father's lawyer in writing, Mother withdrew the money and delivered it via a cashier's check to her counsel. Mother's counsel provided a copy of the cashier's check to Father's counsel and inquired as to the source of the money. It is undisputed that the money in the Account was placed there by Father; however, Mother refused to return the money. The next day, she filed a request for permission to apply the found money in the Account to Father's purported child support arrearage and to her attorney fees. In his response, Father requested an emergency hearing, immediate return of the money for his basic living expenses and debts, sanctions against Mother, and attorney fees.

[8] On June 30, 2017, Father filed a petition to dismiss his petition for modification of custody because he could not afford to incur further attorney fees. On July 3, 2017, Mother moved that Father's petition for dismissal be granted with prejudice and that he be ordered to pay her attorney fees because her counsel had already expended considerable time and effort on hearing preparation. On July 6, 2017, the trial court conducted a hearing on Mother's petition to apply

the found monies to Father's child support arrearage and for attorney fees. At the close of the hearing, the trial court denied Mother's petition, granted Father's motion to dismiss his petition for modification, and ordered Mother to pay Father's attorney fees.

[9]     On August 14, 2017, the trial court conducted a hearing on the parties' cross-motions for attorney fees. During the hearing, counsel for Mother argued that she had prepared extensively for the hearing on Father's petition for modification. She also stated,

> Your Honor what I would like to have marked as Petitioner's Exhibit 2 and offered into evidence is a business record affidavit proving the authenticity of my client's paycheck, I believe this exhibit was entered into evidence in another hearing, um without objection, um for the record so that the Court has evidence of my client's income and income earning ability.

*Id.* at 88. Counsel for Father countered that Father had pursued his petition for modification in good faith, but could not afford, amid his ongoing financial troubles, to incur additional attorney fees after Mother's unanticipated seizure of his money from the Account. Counsel for Father argued,

> [W]hat counsel wants to ignore is her client's action and this all happening at the last moment and that's because [Mother] took money out of my client's account two weeks, or a week before the hearing and so when [dismissal of Father's petition to modify] happens at the last minute that's because of Mother's own actions.

*See id.* at 107. That same day, the trial court entered its order, stating:

1.      Father's Verified Motion to Dismiss Petition for Modification of Custody is hereby granted without prejudice, but Mother's Request for Attorney Fees associated with same, and as set forth herein, remains pending.

2.      This Court denies Mother's Petition and grants Father's Petition.

* * * * *

4.      If there is a child support arrearage, it has not yet been determined and, even if it had been determined, there are certain procedures that need to be followed.

5.      Mother or Mother's attorney shall tender Father's check to Father or Father's attorney.  Father's attorney acknowledges receipt of same.

6.      Father's request for payment of attorney fees is hereby granted.  The law firm of Sterba & Swope, LLP, is hereby given a judgment against Mother for the amount of One Thousand Eight Hundred and 00/100 Dollars ($1,800.00).

7.      Mother's Request for Costs and Attorney Fees due to Father's dismissal of his Petition for Modification of Custody is hereby set for [hearing on August 14, 2017].

App. Vol. II pp. 17-18.

On September 27, 2017, the trial court entered its order on the motions heard at the January 23, February 3, and June 15, 2017 hearings.  The court determined, inter alia, that Father was in willful contempt for his "failure to pay even

minimal child support when he was able to[;] Father was employed at times and did receive unemployment benefits when he was unemployed." *Id*. at 99. The trial court modified Father's support obligation as of May 6, 2016; determined that he owed a total arrearage of $10,408; found Father in contempt for non-payment of support, but stayed any punishment as long as Father stayed current on child support; and ordered Father to apply his tax refunds to the arrearage. Mother now appeals the trial court's orders from the July 6, 2017 and August 14, 2017.

## Analysis

### I. Account

Mother argues that the trial court erred by denying her petition to apply the money in the Account to Father's child support arrearage. At the outset, we note that Father has not filed an appellate brief. "When an appellee fails to submit an appellate brief, 'we need not undertake the burden of developing an argument on the [a]ppellee's behalf.'" *C.H. v. A.R.*, 72 N.E.3d 996, 1001 (Ind. Ct. App. 2017) (quoting *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014)). Instead, we apply a less stringent standard of review with respect to showings of reversible error. "We will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Zoller v. Zoller,* 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). In this context, prima facie error "is defined as[ ] at first sight, on first appearance, or on the face of it." *Id.*

[11] We review child support issues for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002). Regarding the latter, this Court has expressed the importance of appellate deference in family law matters:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to access credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best,* 941 N.E.2d 499, 502 (Ind. 2011). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk,* 770 N.E.2d at 307 (quoting *Brickley v. Brickley,* 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

[12] Mother contends that a "lien for the delinquent child support" arose by operation of law from Father's period of non-payment and that the trial court "abused its discretion when it refused to recognize the child support lien, [and] ordered the [money in the Account] to be paid to the Father who was delinquent in his child support obligation." Appellant's Br. pp. 12-13.

[13] Indiana Code Section 31-16-16-2 states that "[a] payment that is: (1) required under a support order; and (2) delinquent . . . shall be treated as a judgment against the obligor for the delinquent amount." Indiana Code Section 31-16-12-4 provides, "Upon application to the court for enforcement of an order for support, the court may: (1) enforce a judgment created under IC 31-16-16-2 . . . against the person obligated to pay support; (2) issue an income withholding order as provided in IC 31-16-15-0.5 ; or (3) implement an income withholding order as provided in IC 31-16-15-2."

[14] Mother relies upon the foregoing statutes in support of her claim of abuse of discretion. Her reliance is misplaced. Neither statute authorizes such self-help as Mother employed under the instant facts; rather, the statutes *permit* trial courts to fashion remedies tailored to the unique circumstances before them.

[15] Here, although Father did not pay child support in accordance with the parties' divorce decree, the record also reveals that during 2016, he faced criminal charges and unemployment because of serious allegations levied against him. As the trial court found,

> It is the Court's opinion that . . . based upon the evidence, Father did not sexually abuse his daughter. The evidence presented indicates no wrong doing [sic] on Father's part. Absolutely no evidence was presented to suggest Father touched any of the children for sexual gratification. . . . [O]nly a suspicious or a malicious interpretation would lead to an allegation of sexual abuse.

*See* App. Vol. II p. 98.

[16]     Also, the record establishes that, at the time of the hearing on July 6, 2017, the trial court had, under advisement, Father's long-pending petition for modification, wherein he sought a determination as to, among other things, whether he was eligible for a reduction of his child support obligation and whether Mother owed him child support considering his changed financial circumstances. As the trial court rightly noted in its order, the matter of whether Father owed an arrearage under the changed circumstances was a yet-unanswered question before the trial court. *See* App. Vol. II p. 18 ("If there is a child support arrearage, it has not yet been determined and, even if it had been determined, there are certain procedures that need to be followed."). The trial court did not determine the amount of Father's arrearage until September 27, 2017, when contemporaneously specified arrearage repayment duties, terms, and penalties for Father. Mother was not entitled to unilaterally seize the Account money to pay a support arrearage that was not yet found to exist. We cannot say that trial court abused its discretion in denying Mother's petition to apply the Account money to Father's child support arrearage.

## II.    *Attorney Fees*

[17]     Mother also argues that the trial court erred in awarding Father attorney fees regarding his long-pending petition for modification, which he ultimately moved to dismiss. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount toward an opposing party's attorney fees and, in general, the decision to grant or deny fees is left to the sound discretion of the trial court. *Bartlemay v. Witt,* 892 N.E.2d 219, 231 (Ind. Ct. App. 2008). We

will reverse a determination regarding attorney fees in family law matters only upon a showing of a clear abuse of that discretion. *Bean v. Bean,* 902 N.E.2d 256, 266 (Ind. Ct. App. 2009).

> In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court, however, need not cite the reasons for its determination.

*Id*. "The trial court may also consider any misconduct by one party that causes the other party to directly incur additional fees." *In re Paternity of M.R.A.,* 41 N.E.3d 287, 296 (Ind. Ct. App. 2015). When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper. *Id.* at 127-28. Here, given Father's failure to file an appellee's brief, "we will reverse the trial court's judgment if Mother's brief presents a case of prima facie error." *C.H. v. A.R.*, 72 N.E.3d at 1001.

Mother contends that "[n]either party requested that the trial court take judicial notice of any evidence or testimony about the parties' financial conditions or economic resources from the previous hearings"; and that the trial court "heard no evidence" about the "financial resources or economic conditions of the Mother" or regarding "Father's ability to engage in gainful employment or to earn adequate income." Appellant's Br. p. 16.

At the August 14, 2017 hearing on the parties' cross-motions for attorney fees, and at various other interrelated post-decree hearings, the parties presented

evidence regarding their respective economic resources, financial standing, and other relevant circumstances, and the trial court took judicial notice thereof, as evidenced by the following colloquy on cross-examination of Father:

> [Counsel for Mother]: Now during the course of this case, at various times, we have exchanged income information, is that correct?
>
> [Father]: Yes.
>
> [Counsel for Mother]: And you've received information about my client's wages and earnings, correct?
>
> [Father]: Yes.
>
> [Counsel for Mother]: And my client earned approximately Fifty Five Thousand Dollars last year, is that correct?
>
> * * *
>
> [Father]: [I] . . . can't remember exactly, I thought it was closer to Sixty, but I mean I'm sure you have the accurate information.
>
> [Counsel for Mother]: Alright . . . but you do recall that you earned more than she in 2016?
>
> [Father]: Uh yea, I also recall I have much much more legal fees than her.
>
> * * *

[Counsel for Mother]:     And um since the last hearing when I'm looking at ability to pay fees, you have not contributed anything towards the care and support of your three children, have you?

[Father]:     I haven't been able to.

[Counsel for Mother]:     And so the three children right now for essentially all of last year, more than a year now, almost a year and a half have been support [sic] entirely by [Mother].

[Father]:     Well when they're with me I take care of their things.

* * *

[Father]:     Why - - why are we arguing about child support

* * *

[Counsel for Father]:     . . . I am going to object your Honor...

* * *

[Counsel for Father]: . . . [T]his is on attorney fees.

* * *

[Counsel for Mother]:     [This line of questioning goes] to ability to pay your Honor, that's one of the things, the factors the Court must consider and I think if my client is paying . . .

THE COURT: Yea I'm not going to um . . . I think you can argue it, but I've already heard the evidence.

[Counsel for Mother]: Alright and your . . . you will take judicial notice of that evidence your Honor?

THE COURT: Yes.

[Counsel for Mother]: Okay.

THE COURT: But I want you to point it out in argument, rather than . . .

\* \* \*

THE COURT: . . . evidence.

Tr. Vol. II pp. 96-97.

[21] The record reveals that notwithstanding his employment, legal, and financial challenges, Father earned over $38,000 during the pendency of the divorce, but paid "essentially no support"; he was found to owe a child support arrearage in excess of $10,000; and Mother supported the children without his financial assistance for one and one-half years of the pendency. *See* App. Vol. II p. 93. The record also reveals the trial court's determination that both parties engaged in misconduct. *See* Tr. Vol. II p. 114 ("[T]here have been games that have gone on . . . that have lead [sic] to both [parties] incurring tons of attorney fees[.]"). Based upon the foregoing, we cannot say that Mother is in a superior position to pay fees; accordingly, we conclude that her brief presents a case of prima

facie error and that the trial court abused its discretion in awarding attorney fees to Father.

## Conclusion

[22] The trial court did not err in denying Mother's petition to apply money from the Account to Father's purported child support arrearage; however, it erred in awarding attorney fees to Father. We affirm in part and reverse in part with instructions to vacate the attorney fee award to Father.

Affirmed in part and reversed in part.

Najam, J., and Mathias, J., conur.